UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOWN AND COUNTY OF NANTUCKET, MASSACHUSETTS, <br> 16 Broad St. <br> Nantucket, MA 02554, <br><br> Plaintiff, <br><br> v. <br><br> DOUGLAS BURGUM, in his official capacity as Secretary of the Interior, U.S. Department of the Interior <br> 1849 C St., N.W. <br> Washington, DC 20240; and <br><br> U.S. DEPARTMENT OF THE INTERIOR, <br> 1849 C St., N.W. <br> Washington, DC 20240; and <br><br> BUREAU OF OCEAN ENERGY MANAGEMENT, <br> 1849 C St., N.W. <br> Washington, DC 20240, <br><br> Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** <br><br> Case No. _____ |

**INTRODUCTION**

1. The Town and County of Nantucket, Massachusetts (Nantucket), steward to one of the country's largest National Historic Landmarks, the Nantucket Historic District, and celebrated as the "finest surviving architectural and environmental example of a late 18th- and early 19th-century New England seaport town,"[1] bring this appeal to set aside the federal

---

[1] National Historic Landmark Nomination, Nantucket Historic District, p. 52 available at: https://urldefense.proofpoint.com/v2/url?u=https-3A__www.nantucket-

government's approvals to construct SouthCoast Wind, an industrial scale offshore wind farm.

2. With developers pursuing nine industrial scale wind projects, the iconic and pristine waters off Nantucket's coast would, for at least the next 30 years, be occupied by as many as 743 turbines, each towering more than three times (3X) the height of the Statue of Liberty.[2] This industrialization of the near ocean, including SouthCoast Wind's 141 turbines, will inflict severe and long-lasting effects on the character, community, and heritage-tourism-driven economy of Nantucket.

3. The U.S. Bureau of Ocean Energy Management (BOEM) is the federal agency responsible for ensuring balance between benefits that may result from offshore development and harms to environmental and historic resources from construction and operation. Despite acknowledging the adverse impacts that SouthCoast Wind and neighboring farms will have on Nantucket, BOEM violated the law by conducting a sham consulting process to achieve a predetermined conclusion, namely approval of SouthCoast Wind, effectively putting into practice a false narrative pushed by offshore wind developers that climate change solutions should come at the expense of a community's history, culture, and economy.

4. Rather than complying with federal law, BOEM bypassed or shortchanged numerous required steps, shirked its responsibility to the public, and allowed corporate energy

---

2Dma.gov_DocumentCenter_View_37711_National-2DHistoric-2DLandmark-2DRegistration-2DReport-2DPDF&d=DwMGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=f5N8tyUV-MLN5ApmINDWE95NCrkV6g5de-7UopgRyUNQ2dck7lqudpRNw3QIIQ1S&m=Pry0erOQGZWm7wLaHUm56tFj15AEGXxgRo2Gmm1_QTQYbdv7WdcvUClgxG01IbtC&s=d2yXUqep86gmRzIqBoi2i5vHoqEcDKkZr8vSsoXTJLI&e=.

[2] Cumulative Historic Resources Visual Effects Analysis (CHRVEA), January 2023, p. 14. Available at: https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Mayflower_CHRVEA_Public_Redacted_508.pdf.

developers to dictate the terms of permitting. Given BOEM's rapid pace in offshore wind permitting, these failures, if left uncorrected, will set a lasting and deeply harmful precedent, undermining the protections Congress intended for environmental and cultural resources affected by all forms of development.

5. In recognition of BOEM's problematic permitting reviews, President Donald J. Trump issued *Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* on January 20, 2025, which calls for a review of permitted projects and pauses all new and renewed approvals of offshore wind projects in federal waters until a "comprehensive assessment and review of federal wind leases and permitting practices" has been conducted.[3]

6. This action is for declaratory and injunctive relief appealing the failure of BOEM, an agency within the U.S. Department of the Interior, to comply with the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq., and the National Historic Preservation Act (NHPA), 54 U.S.C. §§ 100101 et seq., in its permitting review of SouthCoast Wind, a proposed wind farm off the coast of Massachusetts.

7. Despite repeated calls from Nantucket and other consulting parties for BOEM to correct errors in its application of NEPA and NHPA, BOEM proceeded to approve SouthCoast Wind's permit based on a deeply flawed process and resulting analysis that precluded ways to avoid, minimize, or mitigate the harm that SouthCoast Wind is expected to cause.

---

[3] Presidential Memorandum on Offshore Wind, 90 Fed. Reg. 8, 363 (Jan. 20, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/01/temporary-withdrawal-of-all-areas-on-the-outer-continental-shelf-from-offshore-wind-leasing-and-review-of-the-federal-governments-leasing-and-permitting-practices-for-wind-projects/.

3

8. For the reasons set forth below, BOEM failed to take a hard look at environmental impacts and failed to resolve adverse effects to historic properties in violation of NEPA and NHPA. Therefore, BOEM's Record of Decision is arbitrary, capricious, and not in accordance with law in violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551, et seq. Accordingly, BOEM's decision should be vacated and remanded to BOEM for further consideration and for other relief that the Court deems appropriate as more fully set forth below.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), § 1346 (United States as a defendant), and 5 U.S.C. §§ 701-706 (judicial review of an agency decision).

10. For all claims brought under the APA, Plaintiff challenges a final agency action and has exhausted all administrative remedies.

11. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(A) where Defendants are agencies of the United States that reside in this judicial district.

## PARTIES

12. Plaintiff, Nantucket, is the municipal government within which the National Historic Landmark-designated[4] Nantucket Historic District is located. The Nantucket Historic District

---

[4] National Historic Landmarks are historic properties that illustrate the heritage of the United States and represent an outstanding aspect of American history and culture. The National Park Service administers the National Historic Landmarks Program.

is also listed in the National Register of Historic Places, the nation's official list of historic places worthy of preservation.[5]

13. Defendant Douglas Burgum is the Secretary of the U.S. Department of the Interior and responsible for stewarding the nation's outer continental shelf lands and oceans, including all lease areas selected for offshore wind energy development. Secretary Burgum oversees BOEM and is ultimately responsible for BOEM's decisions. Secretary Burgum is sued in his official capacity as Secretary of the Interior.

14. Defendant U. S. Department of the Interior is an agency of the federal government that plays a central role in how the United States stewards its public lands and waters, implements environmental protections, and pursues environmental justice. The Department of the Interior is authorized to grant a lease, easement, or right-of-way on the outer continental shelf for activities that produce or support the production of energy from oil, gas, and other sources, including offshore wind energy production.

15. Defendant BOEM is a federal agency within the U.S. Department of the Interior that oversees the energy development of the outer continental shelf, including oversight of offshore wind energy lease areas. At all relevant times, BOEM, as the lead federal agency, supervised the environmental review for the wind farms at issue in this appeal and issued the Record of Decision.

16. At all times relevant to this Complaint, Plaintiff participated as a consulting party for purposes of BOEM's NHPA and NEPA reviews.

---

[5] Authorized by the National Historic Preservation Act of 1966, the National Park Service's National Register of Historic Places is part of a national program to coordinate and support public and private efforts to identify, evaluate, and protect America's historic resources.

## BACKGROUND

**Legal Framework**

17. Congress passed the National Environmental Policy Act (NEPA) to "promote efforts which will prevent or eliminate damage to the environment."[6]

18. NEPA requires federal agencies, such as BOEM, to take a "hard look" at the environmental consequences of major federal actions that significantly affect the natural and human environment, including historic and cultural resources, before issuing a decision that will allow the action to occur.

19. Prior to completing the final step in NEPA review—issuing a Record of Decision—BOEM prepared a Final Environmental Impact Statement (EIS) for SouthCoast Wind, which failed to adequately analyze and disclose the project's environmental consequences, including all direct, indirect, and cumulative effects. Nor did the EIS propose and analyze "appropriate mitigation measures," as NEPA requires.[7]

20. Congress enacted the National Historic Preservation Act (NHPA) in recognition of development threats to the nation's irreplaceable historic resources, which include buildings, sites, objects, and their associated landscapes because of their connection to our sense of orientation as a community and identity as an American people.[8]

21. Section 106 of NHPA requires that federal agencies having authority to license any undertaking shall, prior to the issuance of any permit or license, "take into account the effect of the undertaking on any historic district or property."[9] Furthermore, the agency "shall

---

[6] 42 U.S.C. § 4331.
[7] 40 C.F.R. § 1502.14.
[8] Section 1 of the NHPA, Pub. L. No. 89-665, amended by Pub. L. No. 96-515.
[9] 54 U.S.C. § 306180; 36 C.F.R. §800.1(c).

afford the Advisory Council on Historic Preservation . . . a reasonable opportunity to comment with regard to such undertaking."[10]

22. The goal of Section 106 consultation is "to identify historic properties potentially affected by the undertaking, assess its effects and seek ways to avoid, minimize or mitigate any adverse effects on historic properties."[11]

23. Section 110(f) of NHPA applies a heightened level of Section 106 review and requires federal agencies to consult with the National Park Service on adverse effects to National Historic Landmarks and "use all possible planning to minimize harm" to those properties.

## Factual Background

### Nantucket's Historic and Cultural Resources

24. The Nantucket Historic District, which comprises Nantucket, Muskeget, and Tuckernuck Islands, represents the traditional, historic relationship that ocean-facing communities continue to maintain to their ocean settings.

25. Nantucket is unique in the nation due to its high concentration of historic and culturally significant resources, and it is one of the most well-preserved National Historic Landmarks in the nation.

26. Offshore wind farms' massive turbines—nearly the height of a 100-story skyscraper or three times (3X) the height of the Statue of Liberty—along with their associated transmission stations, will create visual blight and disrupt Nantucket's historic ocean views to and from hundreds of historic properties along the coastline, and harm Nantucket's economy.

---

[10] *Id.*
[11] 36 C.F.R. § 800.1(a).

7

27. Because this region is critical to our nation's history and our citizens' understanding of this history, Congress, federal agencies, state agencies, local governments, advocacy organizations, and private property owners have for more than a century taken myriad steps to conserve this region and protect its integrity by maintaining the landscape in a pristine condition for the American public to appreciate and enjoy.

28. These nationally important objectives have been promoted and served through designation of National Historic Landmarks, registration of properties in the National Register of Historic Places, and recognition of historic landscapes.

29. The Nantucket Historic District is home to an extensive collection of historic architecture, with more than 5,000 contributing historic structures. Over 50% of the island is protected from future development. Nantucket's "low, sweeping moors and scrub pines stretching out to the sea on all sides, was embedded in the minds of Nantucket's residents and visitors alike from its earliest days through its rise … tourists and summer residents drawn by the island's picturesque character … led to an early appreciation of Nantucket's unique historic character and interest in its preservation as early as the late 19th century."[12]

30. Nantucket remains a popular tourist destination due to its timeless charm and cultural importance. In 2012, Leslie Thomas of NATIONAL GEOGRAPHIC named Nantucket the "best

---

[12] National Historic Landmark Nomination, Nantucket Historic District at 48, available at: https://urldefense.proofpoint.com/v2/url?u=https-3A__www.nantucket-2Dma.gov_DocumentCenter_View_37711_National-2DHistoric-2DLandmark-2DRegistration-2DReport-2DPDF&d=DwMGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=f5N8tyUV-MLN5ApmINDWE95NCrkV6g5de-7UopgRyUNQ2dck7lqudpRNw3QIIQ1S&m=Pry0erOQGZWm7wLaHUm56tFj15AEGXxgRo2Gmm1_QTQYbdv7WdcvUClgxG01IbtC&s=d2yXUqep86gmRzIqBoi2i5vHoqEcDKkZr8vSsoXTJLI&e=.

8

island in the world," citing the "delectable old town" and its uniqueness.[13] In 2023, Nantucket topped Condé Nast Traveler's list of the most beautiful towns in America.[14] Visitors are enchanted by the place which inspired MOBY DICK, in which Herman Melville describes, "Nantucket! See what a real corner of the world it occupies; how it stands there, away off shore … all beach, without a background."[15]

**SouthCoast Wind**

31. SouthCoast Wind is a proposed utility-scale offshore wind farm project on the outer continental shelf off the coast of Massachusetts. Its export cables would connect to the onshore electric grid in Brayton Point in Somerset, Massachusetts. The project would be built within the OCS-A 0521 Lease Area, approximately 23 miles south of Nantucket, and will feature 141 turbines, each standing 1,066 feet tall.

32. SouthCoast Wind is being developed by Ocean Winds North America, LLC. Until 2024, SouthCoast Wind was jointly owned by Ocean Winds and Shell New Energies LLC. Ocean Winds, now the sole developer, is jointly owned by EDP Renewables, SA and ENGIE, SA. EDP Renewables, SA is owned by the EDP Group, SA (the largest Portuguese utility company), GIC Private Limited (the Government of Singapore), and others. ENGIE, SA is a French utility company in which the French government has the largest shares.

33. SouthCoast Wind is one of nine (9) offshore wind projects proposed off the coast of Nantucket, which, if built, will industrialize Nantucket's viewshed. Cumulatively, there would be up to 743 visible turbines.

---

[13] Leslie Thomas, *Top 10 Islands*, NATIONAL GEOGRAPHIC (September 12, 2012), available at: https://www.nationalgeographic.com/travel/article/islands.
[14] Caitlin Morton, *The 28 Most Beautiful Towns in America*, CONDE NAST TRAVELER (June 29, 2023), available at: https://www.cntraveler.com/gallery/the-most-beautiful-towns-in-america.
[15] Herman Melville, MOBY DICK 66 (1929).

9

34. BOEM determined that the adverse visual effects from SouthCoast Wind would harm the integrity of the Nantucket Historic District by creating an industrialized viewshed that will despoil pristine views of the Atlantic Ocean and Nantucket's historic context.

35. The construction of wind farms in this location is highly controversial, because they threaten the many decades of consistent efforts by Congress, federal agencies, state agencies, local governments, advocacy groups, and private property owners to construct, protect, and maintain historic properties within the context of unspoiled landscapes.

36. Studies indicate that coastal communities will suffer significant economic harm when sizeable portions of the visiting public do not return to visit. However, BOEM did not take these studies into consideration.

**BOEM's Conduct**

37. Although BOEM is the lead federal agency for offshore wind farm permitting and has the chief responsibility for ensuring that SouthCoast Wind complies with all federal environmental laws, BOEM violated federal law as detailed below treating the environmental and historic review as a pretext for a predetermined outcome.

38. As part of its pattern of noncompliance, BOEM failed to: (a) consult meaningfully with Nantucket or consider its opinions; (b) consult meaningfully with Tribal Nations, and ignored their concerns; (c) prepare accurate visual simulations to help the public fully understand the true impacts of SouthCoast and other wind farms; (d) consider economic impacts to historic properties, including decreased property values and lost tourism revenue; (e) assess impacts to local economies, forcing local communities to absorb SouthCoast Wind's externalities, in violation of the letter and spirit of environmental permitting laws; (f) consider the cumulative effects of SouthCoast Wind and eight (8) other offshore wind projects, which will magnify

exponentially the adverse effects that SouthCoast Wind will cause; (g) consider the adverse effects to Nantucket of future turbine blade failures; and (h) comply with heightened levels of review required to protect National Historic Landmarks, such as the Nantucket Historic District, because it did not use all possible planning to minimize harm, but instead chose to rely on SouthCoast Wind's consultants and ignored the concerns of consulting parties.

## CLAIMS FOR RELIEF

39. Plaintiff incorporates previous allegations as if set forth herein.

## FIRST CLAIM FOR RELIEF

## (BOEM'S Violation of NEPA and the APA)

40. Plaintiff incorporates previous allegations as if set forth herein.

41. NEPA requires federal agencies to fully consider and disclose the environmental consequences of any agency action before proceeding with that action. The Advisory Council on Historic Preservation's regulations encourage early coordination of NHPA review with NEPA.[16]

42. BOEM's authorization of SouthCoast Wind is a federal action.

43. BOEM violated NEPA and its implementing regulations by issuing a Record of Decision for SouthCoast Wind and by approving the Final EIS, despite the Final EIS's procedural and substantive defects.

44. BOEM failed to comply with NEPA by failing to consider all direct, indirect, and cumulative impacts of SouthCoast Wind on the environment and historic properties.

45. BOEM's authorization is likely to have a significant adverse impact on the human environment by altering both the national and Nantucket landscapes, harming historic and

---

[16] 36 C.F.R. § 800.8.

cultural resources, and negatively affecting local economies—including Nantucket's economy. BOEM's authorization jeopardizes the historic properties within Nantucket and in impacted communities that rely on tourism revenue for ongoing maintenance and long-term preservation.

46. BOEM failed to adequately consider or resolve the cumulative effects of SouthCoast Wind, because it failed to consider how SouthCoast Wind, along with the eight (8) other offshore wind projects, would together adversely affect historic and cultural resources, including the historic integrity of Nantucket Historic District.

47. BOEM failed to prepare a Supplemental EIS as required by 23 C.F.R. § 771.130 to consider how potential turbine blade failures could cause direct physical harm to the Nantucket Historic District's beaches, as occurred in July 2024 when a turbine blade from Vineyard Wind disintegrated and spread millions of fiberglass shards and microplastics onto Nantucket's beaches. The Vineyard Wind blade failure amounted to new information about significant environmental impacts that BOEM had not previously evaluated in SouthCoast Wind's Final EIS.

48. BOEM's authorization of SouthCoast Wind without NEPA compliance is arbitrary, capricious, and contrary to law.

49. As a result of BOEM's actions and absent injunctive and declaratory relief, Nantucket's interests in historic, cultural, and other resources have been and will continue to be harmed.

## SECOND CLAIM FOR RELIEF

### (BOEM's Violation of Section 106 of the NHPA and APA)

50. Plaintiff incorporates previous allegations as if set forth herein.

51. Section 106 of NHPA requires federal agencies to complete the Section 106 review process "*prior to the approval*" of a federal undertaking.[17]

52. SouthCoast Wind is a federal undertaking and therefore subject to Section 106 of NHPA.

53. BOEM failed to conduct adequate visual simulations of SouthCoast Wind and to identify and assess its direct, indirect, and cumulative effects.

54. BOEM inaccurately assessed and failed to resolve adverse effects, including cumulative effects, to all historic properties on Nantucket, including the Nantucket Historic District, as Section 106 requires.

55. In purported compliance with Section 106, BOEM executed a Memorandum of Agreement (MOA) that failed to resolve adverse effects to all historic properties within Nantucket. Rather than considering Nantucket's concerns as Section 106 consultation requires, BOEM unilaterally proposed so-called "Historic Property Treatment Plans" and subsequently adopted them without meaningfully considering Nantucket's input. These plans do not adequately offset the harm that SouthCoast Wind will cause to Nantucket, and without further efforts to resolve adverse effects, the adoption of these plans violates Section 106's requirement that adverse effects be avoided, minimized, or mitigated prior to approval of the undertaking.

56. Furthermore, even though BOEM knew or should have known that future turbine blade failure is likely, BOEM never assessed this risk, and it did not consider how a turbine blade

---

[17] 54 U.S.C. § 306180; 36 C.F.R. § 800.1(c) (emphasis added).

failure would harm the Nantucket Historic District, nor how to avoid, minimize, or mitigate adverse effects from a turbine blade failure even though Section 106 requires assessment and resolution of all adverse effects to historic properties.

57. Authorizing the project without Section 106 compliance is arbitrary, capricious, and contrary to law.

58. As a result of BOEM's actions and absent injunctive and declaratory relief, Nantucket's interests in historic, cultural, and other resources have been and will continue to be harmed.

### THIRD CLAIM FOR RELIEF

### (BOEM'S Violation of Section 110(f) of the NHPA and APA)

59. Plaintiff incorporates previous allegations as if set forth herein.

60. Section 110(f) requires that BOEM use *all possible planning* to minimize harm to National Historic Landmarks.

61. BOEM failed to comply with Section 110(f)'s heightened standard of review for National Historic Landmarks by not engaging in all possible planning to minimize harm, because BOEM never considered alternative lease areas that would not have created adverse visual effects, failed to conduct adequate visual simulations, failed to assess all adverse effects, including cumulative effects, and failed to resolve adverse effects to all National Historic Landmarks, including the Nantucket Historic District.

62. BOEM failed to properly consult with the National Park Service over ways to minimize harm, relying instead on the mitigation measures it developed for NEPA and Section 106 purposes, even though NEPA and Section 106 have a lower standard of review than Section 110(f) requires.

63. Furthermore, BOEM never considered the potential for a turbine blade failure for SouthCoast Wind, which is evidence that BOEM did not undertake all possible planning to minimize harm.

64. Authorizing the project without Section 110(f) compliance is arbitrary, capricious, and contrary to law.

65. As a result of BOEM's actions and absent injunctive and declaratory relief, Nantucket's interests in historic, cultural, and other resources have been and will continue to be harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1. Declare that BOEM's approval of SouthCoast Wind's Record of Decision, including the Final EIS, violates NEPA and NEPA's implementing regulations;

2. Declare that BOEM violated its duty to comply with Section 106 of NHPA and its implementing regulations by failing to identify, assess, and resolve adverse effects;

3. Declare that BOEM violated Section 110(f) of NHPA by failing to consult adequately with the National Park Service and not conducting all possible planning to minimize harm to National Historic Landmarks, including the Nantucket Historic District;

4. Order BOEM to set aside the Record of Decision that it issued for SouthCoast Wind and prepare a new EIS or Supplemental EIS;

5. Order BOEM to set aside the MOA issued to conclude the consultation required by Section 106 of NHPA and re-start consultation;

6. Pending BOEM's completion of a revised EIS or Supplemental EIS and Record of Decision and completion of a legally adequate Section 106 and Section 110(f) process, enjoin BOEM from allowing any construction activities to continue that may have already commenced;

7. Grant Plaintiff such temporary restraining orders or preliminary or permanent injunctions as appropriate;

8. Retain jurisdiction of this action to ensure compliance with its decree;

9. Award Plaintiff its fees, costs, expenses, and reasonable attorneys' fees as provided by 28 U.S.C. § 2412 and 54 U.S.C. § 307105, and expert witness fees; and

10. Grant Plaintiff additional relief as the Court deems appropriate.

Respectfully submitted on March 27, 2025,

/s/ William J. Cook

William J. Cook, Bar No. SC009
CULTURAL HERITAGE PARTNERS, PLLC
2101 L Street NW; Ste. 300
Washington, DC 20037
Tel: 202.567.7594
Fax: 866.875.6492
Email: will@culturalheritagepartners.com

Gregory A. Werkheiser (pending admission *pro hac vice*)
Katherine L. Sorrell (pending admission *pro hac vice*)
CULTURAL HERITAGE PARTNERS, PLLC
East Grace Street; Ste. A
Richmond, VA 23223
(202) 567-7594
Email: greg@culturalheritagepartners.com;
katherine@culturalheritagepartners.com

COUNSEL FOR PLAINTIFF