# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOWN AND COUNTY OF NANTUCKET, MASSACHUSETTS,<br><br>     *Plaintiff,*<br><br>  v.<br><br>DOUGLAS BURGUM, Secretary of the Interior;<br>U.S. DEPARTMENT OF THE INTERIOR;<br>BUREAU OF OCEAN ENERGY MANAGEMENT,<br><br>     *Defendants,*<br><br>  and<br><br>SOUTHCOAST WIND ENERGY LLC,<br><br>     *Proposed Defendant-Intervenor.* | Case No.: 1:25-cv-00906 |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SOUTHCOAST WIND ENERGY LLC'S MOTION TO INTERVENE AS A DEFENDANT

HOLLAND & KNIGHT LLP

By: */s/ Rafe Petersen*

Rafe Petersen (Bar ID Number: 465542)
Alexandra E. Ward (Bar ID Number: 1687003)
800 17th Street NW, #1100
Washington, D.C. 20006
Rafe.Petersen@hklaw.com
T: (202) 419-2481
F: (202) 955-5564

*Counsel for Proposed Defendant-Intervenor*
*SouthCoast Wind Energy LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    **INTRODUCTION**.................................................................................... 1

II.   **BACKGROUND** ................................................................................... 3

    A.    SouthCoast Wind Project Overview ................................................ 3

    B.    The Multi-Year Environmental Review and Approval Process ............................. 4

    C.    Multi-Year Historic Properties Consultation and Approval Process ...................... 6

    D.    SouthCoast Wind Financial Obligations and Commercial Commitments .............. 7

III.  **ARGUMENT** ....................................................................................... 8

    A.    SouthCoast Wind Is Entitled to Intervention as of Right........................................ 8

        1.    SouthCoast Wind Has Article III Standing.................................................. 9

        2.    SouthCoast Wind's Motion Is Timely ...................................................... 10

        3.    SouthCoast Wind Has Multiple Significant Protectable Interests Relating to the Subject of This Action ........................................ 11

        4.    Without Intervention, Disposition of the Action Would Impede SouthCoast Wind's Ability to Protect Its Interests ...................................... 12

        5.    Existing Parties Will Not Adequately Represent SouthCoast Wind's Interests ............................................ 13

    B.    Alternatively, the Court Should Grant Permissive Intervention ............................ 14

IV.   **CONCLUSION** .................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allco Renewable Energy Ltd. v. Haaland*,
  No. 1:21-cv-11171-IT, Dkt. 121 (D. Mass. June 21, 2022).......................................................3

*Am. Horse Prot. Ass'n v. Veneman*,
  200 F.R.D. 153 (D.D.C. 2001).........................................................................................13

*Carpenters Indus. Council v. Zinke*,
  854 F.3d 1 (D.C. Cir. 2017)...........................................................................................10

*County of Cape May, v. United States of America*,
  1:23-cv-21201-KMW-SAK (D.N.J. Oct. 17, 2023) ..............................................................2

*\*Crossroads Grassroots Pol'y Strategies v. FEC*,
  788 F.3d 312 (D.C. Cir. 2015)..........................................................8, 9, 10, 11, 13

*\*Dimond v. Dist. of Columbia*,
  792 F.2d 179 (D.C. Cir. 1986)...................................................................................12, 13

*EEOC v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998).......................................................................................15

*Fisheries Survival Fund v. Jewell*,
  No. 1:16-cv- 02409 (TSC), Min. Order (D.D.C. Jan. 16, 2017).............................................9

*Friends of the Headwaters v. U.S. Army Corps of Eng'rs*,
  2021 WL 1061162 (D.D.C. Mar. 20, 2021)........................................................................12

*\*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003).....................................................................11, 12, 13, 14

*Hardin v. Jackson*,
  600 F. Supp. 2d 13 (D.D.C. 2009).....................................................................................14

*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995)...........................................................................................10

*Jones v. Prince George's Cty., Md.*,
  348 F.3d 1014 (D.C. Cir. 2003).......................................................................................11

*Kinsella v. BOEM*,
  Dkt. 43, No. 1:22-cv-02147-JMC (D.D.C. Nov. 7, 2022)...............................................3, 8

*\*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...................................................................................................9, 10

*Mahoney v. U.S. Dep't of the Interior*,
  No. 2:22-cv-01305-FB-ST, Dkt. 16 (E.D.N.Y. Mar. 14, 2022) ..............................................3

*Nat. Res. Def. Council v. Costle*,
  561 F.2d 904 (D.C. Cir. 1977).........................................................................................14

*Nat. Res. Def. Council v. US EPA*,
  99 F.R.D. 607 (D.D.C. 1983)...........................................................................................12

*Preservation Society of Newport County v U.S. Dept. of the Interior*,
    Case No.: 1:23-cv-03513-RCL (D.D.C. Nov. 22, 2023) ........................................................2

*Pub. Emps. For Env't Resp. v. Bromwich*,
    No. 1:10-cv-01067-RBW, Min. Order (D.D.C. Sept. 8, 2010) ...............................................9

*Responsible Offshore Dev. Alliance v. U.S. Dep't of the Interior*,
    No. 1:22-cv-00237-CRC, Mem. Op. .......................................................................................9

*Roeder v. Islamic Republic of Iran*,
    333 F.3d 228 (D.C. Cir. 2003) ..............................................................................................11

*Save Long Beach Island v. U.S. Dep't of Commerce*,
    No. 3:23-cv-01886-RK, Dkt. 18 (D.N.J. May 19, 2023) .........................................................3

*Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*,
    No. 1:21-cv-03276-CRC, Min. Order (D.D.C. Jan. 19, 2022) ...............................................9

*\*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ...............................................................................................9

*\*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ......................................................................................11, 13

## STATUTES

21N M.G.L. § 3(b) ...........................................................................................................................4

R.I. Gen. Laws § 39-26-4(a)(14) .....................................................................................................4

## COURT RULES

Fed. R. Civ. P.

    24...................................................................................................................................1, 11

    24(a)(2) .................................................................................................................11, 12, 13

    24(b)(2) ...........................................................................................................................14

    24(c) ..................................................................................................................................1

Local Civil Rule 7(j) ........................................................................................................................1

## OTHER AUTHORITIES

BOEM, Cumulative Historic Resources Visual Effects Analysis - Mayflower Wind
    Project ("CHRVEA") (Jan. 2023) *available at*
    https://www.boem.gov/sites/default/files/documents/renewable-energy/stat...........................5

BOEM, Finding of Adverse Effect for the SouthCoast Wind Construction and
    Operations Plan (Nov. 2024), *available at*
    https://www.boem.gov/sites/default/files/documents/renewable-
    energy/SouthCoast_FEIS_AppI_FindingAdverseEffect_20240925_Clean_508.p
    df ..........................................................................................................................................5

BOEM, SouthCoast Wind (formerly Mayflower Wind), *available at*
    https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-
    formerly-mayflower-wind...................................................................................................6

Construction & Operations Plan – SouthCoast Wind Farm (Nov. 2024), *available at* https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-construction-and-operations-plan .............................................................................5

Declaration of Michael Brown in Support of SouthCoast Wind's Motion to Intervene (Apr. 8, 2025)...................................................1, 3, 4, 5, 6, 7, 8, 9, 10, 13

Letter from Town of Nantucket Select Board to Hon. Doug Burgum, *Offshore Wind Permit Review*, (Feb. 25. 2025), *available at*  https://www.nantucket-ma.gov/DocumentCenter/View/51280/-February-2025-the-Town-wrote-to-the-Secretary-of-the-Interior-Doug-Bergum-requesting-review-of-the-permits-issued-by-BOEM-in-SouthCoast-Wind.....................................................................3

Memorandum of Agreement among the Bureau of Ocean Energy Management, the State Historic Preservation Officers of Massachusetts and Rhode Island, Southcoast Wind Energy LLC, and the Advisory Council on Historic Preservation Regarding the Southcoast Wind Project (Dec. 2024) ..........................................7

SouthCoast Wind Energy LLC ("SouthCoast Wind") by and through their undersigned counsel hereby submit this Memorandum in Support of SouthCoast Wind's Motion to Intervene as Defendant pursuant to Federal Rule of Civil Procedure 24.

## I.     INTRODUCTION

SouthCoast Wind is the developer of the SouthCoast Wind Farm and SouthCoast Wind Export Cable (collectively, the "Project"), an offshore wind energy project that will provide clean, reliable power to homes and businesses in Massachusetts and Rhode Island and support greenhouse gas reduction and climate goals.  SouthCoast Wind has worked to develop the Project for over seven years, and has commercial commitments and expenditures in excess of $600 million dollars to date in the Project. *See* Declaration of Michael Brown in Support of SouthCoast Wind's Motion to Intervene ("Brown Decl.") at ¶¶ 4, 33. The Town and County of Nantucket, Massachusetts ("Plaintiff") seeks an order setting aside Federal Defendants'[1] approvals of the Project, alleging violations of the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and the Administrative Procedure Act ("APA").  *See* Compl. For Declaratory and Injunctive Relief ("Compl."), Dkt. 1 at 11-15.

SouthCoast Wind seeks intervention as of right in this action pursuant to Federal Rule of Civil Procedure 24(a)(2) to defend its significant investment and interests in the Project. Alternatively, SouthCoast Wind seeks leave for permissive intervention under Rule 24(b).[2]

SouthCoast Wind readily meets the test for intervention as of right. As a threshold matter, SouthCoast Wind has standing for the reasons described below. *See infra* Section III.A.1. SouthCoast Wind also satisfies the four-factor intervention test. *First*, SouthCoast Wind's intervention is timely

---

[1] "Federal Defendants" are the Secretary of the U.S. Department of the Interior, the Department of the Interior, and the Bureau of Ocean Energy Management ("BOEM").

[2] SouthCoast Wind has attached hereto its proposed Answer, in accordance with Federal Rule of Civil Procedure 24(c) and Local Civil Rule 7(j).

and would not prejudice any of the existing parties, given that SouthCoast Wind has moved to intervene in this action twelve days after Plaintiff filed its Complaint. *See infra* Section III.A.2. *Second*, SouthCoast Wind has direct, substantial, and legally protectable interests in the challenged Project approvals. SouthCoast Wind has sought, consulted on, and received many permits and approvals from state and federal authorities – including those at issue in this case – that are required for construction and operation of the Project. *See infra*, Sections II.B-C & III.A.3. *Third,* Plaintiff's requested relief threatens to directly impair SouthCoast Wind's interests, as an order enjoining or setting aside the challenged approvals and construction activities would cause significant delays in the Project's construction and operation, increase Project costs, and threaten SouthCoast Wind's significant investments in the Project. *See infra* Sections II.D and III.A.4. *Fourth*, SouthCoast Wind's participation in this case is necessary because its interests are distinct from those of the Federal Defendants and therefore are not adequately represented in this litigation. In contrast to Federal Defendants, SouthCoast Wind is the only party that can speak to its investments, the construction schedule, and any ramifications on Project approvals, as well as to the Project's significant, legally protectable contractual and property interests if the requested relief were to be granted. Thus, no other party is capable of adequately representing SouthCoast Wind's interests in the subject of this action. *See infra* Section III.A.5.

This case is the latest in a string of coordinated attacks on the Federal Defendants' approvals of offshore wind projects in this region, none of which have been decided against the validity of the project approvals on the merits, and in all of which the courts have denied any requested temporary or preliminary injunctive relief.[3] *See, e.g., Preservation Society of Newport County v U.S. Dept. of the Interior,* Case No.: 1:23-cv-03513-RCL (D.D.C. Nov. 22, 2023); *County of Cape May, v. United*

---

[3] The federal district courts have consistently granted intervention to offshore wind developers in these cases.

*States of America,* 1:23-cv-21201-KMW-SAK (D.N.J. Oct. 17, 2023); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022); *Save Long Beach Island v. U.S. Dep't of Commerce*, No. 3:23-cv-01886-RK, Dkt. 18 (D.N.J. May 19, 2023); *Mahoney v. U.S. Dep't of the Interior*, No. 2:22-cv-01305-FB-ST, Dkt. 16 (E.D.N.Y. Mar. 14, 2022); *Allco Renewable Energy Ltd. v. Haaland*, No. 1:21-cv-11171-IT, Dkt. 121 (D. Mass. June 21, 2022). Nevertheless, Plaintiff appears buoyed by the change in political climate and seeks to enjoin the Project.[4] Consequently, SouthCoast Wind Court respectfully submits that it is entitled to intervene in this case in order to vigorously defend its interests.

## II.    BACKGROUND

### A.    SouthCoast Wind Project Overview

The Project involves the construction and operation of an approximately 2,400-megawatt ("MW") commercial-scale offshore wind energy facility, consisting of up to 141 wind turbine generators ("WTGs") and up to two offshore substation platforms. Brown Decl. ¶ 5. The Project will be constructed in federal waters on BOEM Renewable Energy Lease No. OCS-A 0521, which is located in the Atlantic Ocean approximately 23 miles south of Nantucket, Massachusetts, and approximately 60 miles from Rhode Island, on the Outer Continental Shelf. *Id.* Phase 1 of the Project is designed to deliver approximately 1,087 MW of offshore wind capacity to Massachusetts and approximately 200 MW to Rhode Island. Once fully operational the Project will deliver approximately 2,400 MW – enough clean energy to power more than 1,400,000 homes. *Id.* ¶ 8.

After the lease was executed in 2019, the Project was subject to approximately six years of

---

[4] In a February 25, 2025 letter from the Town and County of Nantucket to Secretary Burgum, Plaintiff asked that the Department of Interior reconsider the Project while offering to provide their "unique perspectives" for the review. *See* Letter from Town of Nantucket Select Board to Hon. Doug Burgum, *Offshore Wind Permit Review*, (Feb. 25. 2025), *available at* https://www.nantucket-ma.gov/DocumentCenter/View/51280/-February-2025-the-Town-wrote-to-the-Secretary-of-the-Interior-Doug-Bergum-requesting-review-of-the-permits-issued-by-BOEM-in-SouthCoast-Wind.

vigorous review by multiple federal, state, and local agencies, covering all aspects of the direct, indirect, and cumulative effects of the Project. Having obtained the necessary approvals, SouthCoast Wind has ordered equipment and contracted with vessels to prepare for offshore construction. *Id.* ¶ 7. This will result in good paying jobs for the residents of Massachusetts and Rhode Island. *Id.* ¶ 3.

The Project will contribute to American energy dominance goals by using domestic wind energy resources and will not be reliant on foreign countries for fuel. The Project will also contribute to Rhode Island's and Massachusetts's renewable energy and emission reduction goals. Rhode Island has a goal of reaching 100% renewable energy by 2033, and Massachusetts mandates net-zero greenhouse emissions by 2050 and a 50% reduction from 1990 emissions by 2030. *See* 39 R.I. Gen. Laws § 39-26-4(a)(14); 21N M.G.L. § 3(b). The public benefits of the Project are significant and undeniable.

### B.    The Multi-Year Environmental Review and Approval Process

SouthCoast Wind has invested significant resources in the extensive, multi-year planning and development process for the Project, including by developing voluminous technical and scientific submissions to federal, state, and local agencies and participating in public review processes. *See* Brown Decl. ¶ 6. SouthCoast Wind's direct involvement with Defendant BOEM goes back to December 2018, when BOEM conducted a competitive lease sale for commercial leasing for wind power generation offshore of Massachusetts. *Id.* ¶ 13. Mayflower Wind Energy LLC (renamed SouthCoast Wind Energy LLC in 2023) won the lease for A-0521. *Id.*

SouthCoast Wind developed and submitted to BOEM a Site Assessment Plan, which BOEM approved on May 26, 2020. Brown Decl. ¶ 14. SouthCoast Wind then undertook extensive field surveys to understand and characterize the environment and the Project site, including meteorological, bathymetric, geological, geotechnical, geophysical, biological, archaeological,

hazard, and oceanographic surveys. *Id.* ¶ 15. As documented in BOEM's Finding of Adverse Effect,[5] the survey work for the Project also included an assessment of historic properties, including a marine archaeological survey, a terrestrial archaeological survey, a Visual Impacts Analysis, a Historic Resources Visual Effects Analysis specific to the Project, and a Cumulative Historic Resources Visual Effects Analysis.[6] *See infra,* Section II.C; Brown Decl. ¶¶ 22, 27.

SouthCoast Wind prepared and submitted to BOEM a detailed Construction and Operations Plan ("COP") in February 2021, which SouthCoast Wind updated as the development process progressed. Brown Decl. ¶ 16. The final version of the COP is thousands of pages long, including appendices.[7]

On November 1, 2021, BOEM issued a Notice of Intent ("Notice") to prepare an Environmental Impact Statement ("EIS") under NEPA for its review of the COP. Brown Decl. ¶ 17. That Notice began a more than three-year period of environmental review by the federal government involving SouthCoast Wind, eleven federal agencies, three state cooperating agencies, and an extensive array of other stakeholders, ranging from the fishing industry to local communities (including Plaintiff), to American Indian tribes and historic preservation organizations. *Id.* BOEM published the draft EIS ("DEIS") for the Project on February 17, 2023. *Id.* BOEM's NEPA process included extensive consultations and public involvement. *Id.* ¶¶ 17-19. BOEM had a public scoping period where interested parties were invited to offer feedback and identify issues and potential

---

[5] *See* BOEM, Finding of Adverse Effect for the SouthCoast Wind Construction and Operations Plan (Nov. 2024), *available at* https://www.boem.gov/sites/default/files/documents/renewable-energy/SouthCoast_FEIS_AppI_FindingAdverseEffect_20240925_Clean_508.pdf

[6] *See* BOEM, Cumulative Historic Resources Visual Effects Analysis - Mayflower Wind Project ("CHRVEA") (Jan. 2023) *available at* https://www.boem.gov/sites/default/files/documents/renewable-energy/stat activities/Mayflower_CHRVEA_Public_Redacted_508.pdf

[7] *See* Construction & Operations Plan – SouthCoast Wind Farm (Nov. 2024), *available at* https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-construction-and-operations-plan

alternatives for BOEM to consider in the EIS, as well as three public meetings during the public comment period on the DEIS. *Id.* ¶ 19. SouthCoast Wind attended all of the meetings and submitted comments on the DEIS. *Id.* BOEM published the final EIS ("FEIS") on November 15, 2024.[8] *Id.* ¶ 17.

On December 20, 2024, BOEM issued a Record of Decision ("ROD") documenting the U.S. Department of the Interior's decision to approve the COP. BOEM subsequently issued the COP approval on January 17, 2025.[9] Brown Decl. ¶ 20. Meanwhile, extensive additional time, effort, and financial resources were expended to secure other required permits and approvals for the Project. *Id.* ¶ 21.

### C.    Multi-Year Historic Properties Consultation and Approval Process

BOEM's NHPA Section 106 consultation process began in the Fall of 2021. Brown Decl. ¶ 24. Between September 29 and November 1, 2021, BOEM extended invitations to consult under NHPA Section 106 to 81 potential consulting parties and additional consulting parties were invited through the consultation process as they were identified. *Id.* BOEM convened five consulting party meetings between July 7, 2022, and October 8, 2024, all of which SouthCoast Wind participated in. *Id.* SouthCoast Wind also engaged in additional outreach directly to consulting parties, including with Plaintiff and Plaintiff's counsel, multiple times between 2020 and 2024. *Id.*

BOEM circulated documents and analyses to consulting parties and consulted on the Area of Potential Effect and identification of historic properties over the course of the three-year Section 106

---

[8] The DEIS and FEIS are available under the "Environmental Review" tab of BOEM's website. *See* BOEM, SouthCoast Wind (formerly Mayflower Wind), *available at* https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-formerly-mayflower-wind.

[9] The BOEM ROD and the COP approval are available under the "Project Overview" and "Construction and Operations Plan" tabs of BOEM's website, respectively. *See* BOEM, SouthCoast Wind (formerly Mayflower Wind), *available at* https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-formerly-mayflower-wind.

consultation process.[10]  Brown  Decl.   ¶ 25.  BOEM circulated its draft Finding of Adverse Effect in February 2023 and also a draft Memorandum of Agreement ("MOA"), both of which were refined over time with additional consulting party comments and consultation meetings.  *Id.* ¶ 26.  BOEM circulated its final Finding of Adverse Effect in September 2024.  *Id.*  Each of the relevant State Historic Preservation Officers – including Massachusetts's – concurred in BOEM's Finding of Adverse Effect or did not object.  *Id.* ¶ 29.

The final MOA was executed on December 18, 2024 among BOEM, SouthCoast Wind, the Massachusetts SHPO, the Rhode Island SHPO, the Advisory Council on Historic Preservation ("Advisory Council"), the U.S. Army Corps of Engineers, the D.O.I. Bureau of Safety and Environmental Enforcement, the Town of Swansea, Massachusetts, and the Oak Grove Cemetery Association.[11]  Brown  Decl.   ¶ 30.  The final MOA memorializes agreements by the signatories to adopt specific avoidance, minimization, and mitigation measures and that "[e]xecution of [the] MOA by BOEM, Massachusetts SHPO, Rhode Island SHPO, and the ACP and implementation of its terms demonstrates that BOEM has taken into account the effects of [the] undertaking on historic properties . . ."[12]

### D.    SouthCoast Wind Financial Obligations and Commercial Commitments

To date, SouthCoast Wind has incurred financial obligations and commercial commitments in excess of $600 million in developing, permitting, engineering, and preparing for and commencing construction of the Project. Brown  Decl. ¶ 33. SouthCoast and its sponsors have taken other steps in reliance on the approvals challenged here to secure production slots and capacity reservations in

---

[10] *See* CHRVEA, at 5.
[11] Memorandum of Agreement among the Bureau of Ocean Energy Management, the State Historic Preservation Officers of Massachusetts and Rhode Island, Southcoast Wind Energy LLC, and the Advisory Council on Historic Preservation Regarding the Southcoast Wind Project (Dec. 2024) ("MOA").
[12] Brown Decl. ¶ 26.

order to deliver on the timelines promised in the bid leading to the award of offtake agreements.

In 2024, SouthCoast Wind was selected by two states to enter into long term contracts ("power purchase agreements" or "PPAs") for a combined approximately 1,287 MW of generating capacity: (1) a PPA with Massachusetts for approximately 1,087 MW; and (2) a PPA with Rhode Island for approximately 200 MW. SouthCoast Wind expects contract negotiations will be concluded by June 30, 2025. Brown Decl. ¶ 9. If the Project cannot achieve commercial operations within the timeframe established under the SouthCoast Wind PPAs as bid, SouthCoast Wind faces loss of the PPAs, or if executed, significant default damages, further increased contract security requirements, and likely termination of its PPAs. *Id.* ¶ 34. If the SouthCoast Wind PPAs were to be terminated, the value of the Project would be substantially reduced, as SouthCoast Wind would likely lose the great majority of its expected future profits. *Id.* ¶ 35.

### III.    ARGUMENT

#### A.    <u>SouthCoast Wind Is Entitled to Intervention as of Right</u>

Under Rule 24(a)(2), SouthCoast Wind is entitled to intervention as of right in this action. To intervene as of right, an applicant must first demonstrate that it has Article III standing. *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015). Once standing is established, the court then applies a four-factor test, requiring that: (1) the motion to intervene be timely; (2) the applicant claims a legally protected interest; (3) the action, as a practical matter, impairs or impedes that interest; and (4) the potential intervenor's interest cannot adequately be represented by another party to the action. *Id.* at 320.

SouthCoast Wind satisfies all requirements for intervention as of right, as set forth below. Indeed, courts in this district have granted intervention as of right to offshore wind project sponsors in legal challenges to their respective project approvals. *See, e.g.*, *Kinsella*, Dkt. 43, No. 1:22-cv-02147-JMC (granting South Fork Wind intervention in challenge to BOEM's approval for the South

Fork Wind project); *Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*, No. 1:21-cv-03276-CRC, Min. Order (D.D.C. Jan. 19, 2022) (granting offshore wind development company's motion to intervene in challenge to BOEM's project approval); *Responsible Offshore Dev. Alliance v. U.S. Dep't of the Interior*, No. 1:22-cv-00237-CRC, Mem. Op. and Order (D.D.C. June 27, 2022) (same); *Fisheries Survival Fund v. Jewell*, No. 1:16-cv- 02409 (TSC), Min. Order (D.D.C. Jan. 16, 2017) (same); *Pub. Emps. For Env't Resp. v. Bromwich*, No. 1:10-cv-01067-RBW, Min. Order (D.D.C. Sept. 8, 2010) (same).

### 1. SouthCoast Wind Has Article III Standing

SouthCoast Wind has standing to intervene as a defendant in this case in which Plaintiff challenges approvals issued to SouthCoast Wind for construction and operation of the Project. "The standing inquiry for an intervening-defendant is the same as for a Plaintiff: the intervenor must show injury in fact, causation, and redressability." *Crossroads*, 788 F.3d at 316; *see also Sierra Club v. EPA*, 292 F.3d 895, 898-99 (D.C. Cir. 2002).

SouthCoast Wind easily satisfies the injury in fact requirement. In this case, Plaintiff challenges the legality of approvals granted by BOEM to SouthCoast Wind that are necessary for construction and operation of the Project, which SouthCoast Wind planned, designed, and is funding. Compl. at ¶ 15, 19, 32; Brown Decl. ¶ 4. While styled against the agencies, the relief Plaintiff seeks harms SouthCoast Wind the most. The D.C. Circuit Court of Appeals has made clear that where a party's activity, product, permit, or license "is 'an object of the [agency] action (or forgone action) at issue' . . . there should be 'little question'" regarding the party's standing. *Sierra Club*, 292 F.3d at 900 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)); *see also Crossroads*, 788 F.3d at 317. Furthermore, the relief Plaintiff seeks – setting aside the approvals and enjoining the Project's construction and operation, Compl., at 15, Prayer for Relief ¶¶ 4, 6, 7 – would impose financial harms on SouthCoast Wind, threatening the significant investments in the lease and Project

approvals.    Moreover, if SouthCoast Wind does not achieve commercial operations within the timeframe established under the SouthCoast Wind PPAs as bid, SouthCoast Wind may face loss of the PPAs, or if executed, liquidated damages, increased contract security requirements, and termination of its PPAs.  Brown Decl. ¶ 34.    SouthCoast Wind's substantial investments are at risk if Plaintiff prevails in the relief it seeks.  *Id.* ¶ 35.  These economic injuries clearly constitute cognizable harm sufficient to demonstrate that SouthCoast Wind has standing.  *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("Economic harm to a business clearly constitutes an injury-in-fact.  A dollar of economic harm is still an injury-in-fact for standing purposes.").

Plaintiff seeks to interrupt SouthCoast Wind's investment and render it meaningless, hence the alleged injury is "fairly traceable to the challenged conduct." *Lujan*, 504 U.S. at 560–61. Ultimately, this litigation threatens SouthCoast Wind's substantial efforts and investment in the administrative approval process for the Project.  *See supra* at Sections II.B-C.  Such "participat[ion] in the administrative process" that culminated in the challenged administrative action creates an interest sufficient to support intervention.  *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397-98 (9th Cir. 1995).

With respect to the causation and redressability requirements for standing, SouthCoast Wind necessarily satisfies these requirements because the relief Plaintiff seeks would cause the injuries described above.  Where a Plaintiff's suit challenges an agency decision that was in the applicant's favor, "it rationally follows [that] the injury is directly traceable to [Plaintiff's] challenge." *Crossroads*, 788 F.3d at 316.  This harm would be prevented if the relief Plaintiff requests is denied.

### 2.    SouthCoast Wind's Motion Is Timely

In assessing timeliness, this Circuit considers factors such as (1) the time elapsed since the inception of the suit, (2) the purpose for which intervention is sought, (3) the necessity for intervention as a means of preserving the applicant's rights, and (4) the improbability of prejudice to

those already parties in the case. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). SouthCoast Wind filed this motion within twelve days after Plaintiff filed its Complaint, and before any responsive pleadings have been filed. Intervention will not cause delay, and no party will be in any way prejudiced by SouthCoast Wind's intervention at this earliest possible stage in the proceedings. Therefore, SouthCoast Wind's motion is timely. *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (motion timely when filed less than two months after commencement of suit); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (motion timely when filed thirty days after intervenor-defendant received notice).

### 3. SouthCoast Wind Has Multiple Significant Protectable Interests Relating to the Subject of This Action

SouthCoast Wind easily satisfies the second requirement of Rule 24(a)(2) in that it has "an interest relating to the property or transaction which is the subject matter of the action." Fed. R. Civ. P. 24(a)(2). "'An intervenor's interest is obvious when [it] asserts a claim to property that is the subject matter of the suit . . . .'" *Fund for Animals, Inc.*, 322 F.3d at 735. The existence of constitutional standing suffices to show a legally protected interest for purposes of Rule 24. *See Crossroads*, 788 F.3d at 320 ("[S]ince [the proposed defendant- intervenor] has constitutional standing, it *a fortiori* has 'an interest relating to the property or transaction which is the subject of the action.'" (quoting *Fund for Animals,* 322 F.3d at 735)); *see also Jones v. Prince George's Cty., Md.*, 348 F.3d 1014, 1018-19 (D.C. Cir. 2003). As explained above, SouthCoast Wind has significant protectable interests in: (1) the Project's timely construction and commencement of operations authorized by the challenged permits and approvals; (2) meeting SouthCoast Wind's "as bid" contractual obligations for construction and operation, including under the SouthCoast Wind PPAs; (3) the considerable time, effort, and cost SouthCoast Wind has invested in the administrative approval process and construction of the Project to date, and in the approvals themselves; and (4) investment and financial obligations in excess of $600 million dollars in the Project, which would be

threatened if Plaintiff succeeds in blocking or delaying the Project. *See supra* at Section II. *See Dimond v. Dist. of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986); (recognizing financial interests for purposes of intervention). For all of these reasons, SouthCoast Wind satisfies the significant protectable interest requirement.

### 4. Without Intervention, Disposition of the Action Would Impede SouthCoast Wind's Ability to Protect Its Interests

To satisfy the third factor of the Rule 24(a)(2) test, SouthCoast Wind need only show that an unfavorable disposition of this action "may as a practical matter impair or impede" its ability to protect its interests. Fed. R. Civ. P. 24(a)(2). The D.C. Circuit interprets this language to require a court to consider the "practical consequences" of denying intervention to the applicant, including economic consequences. *Fund for Animals*, 322 F.3d at 735. Where, as here, a movant seeks intervention to defend the validity of a government approval it has been granted, there is a clear showing that a decision in movant's absence would impair its ability to protect that interest. *See, e.g., Friends of the Headwaters v. U.S. Army Corps of Eng'rs*, 2021 WL 1061162, at *3 (D.D.C. Mar. 20, 2021) (granting intervention as of right where Plaintiff's requested relief, if granted, "would as a practical matter impede" intervenor permit holder's "ability to proceed" with its project by requiring the permit holder "to halt construction and incur additional costs associated with delay"). Courts have also found that parties' interests are practically impaired if they "have to start over again" to obtain necessary government approvals. *Natural Res. Def. Council, Inc. v. US EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983).

Plaintiff asks this Court, among other things, to set aside the Project's government approvals, enjoin construction activities for the Project, and require BOEM to "prepare a new EIS" and "re-start" the consultation process under NHPA Section 106. Compl. at 15 (Prayer for Relief). Thus, Plaintiff's action threatens the Project approvals, and Plaintiff seeks relief that, if granted, would impair SouthCoast Wind's ability to complete construction as planned and commence scheduled

operation of the Project and delivery of energy to the electric grid and hundreds of thousands of homes.  SouthCoast Wind's intervention in this action is thus necessary to protect its significant interests in the challenged approvals authorizing the Project.  If denied intervention, the practical impact on SouthCoast Wind would be that it would be unable to participate in the defense of its own entitlements.

> **5.    Existing Parties Will Not Adequately Represent SouthCoast Wind's Interests**

Given that SouthCoast Wind has significant protectable interests that may be impaired by the disposition of this litigation, SouthCoast Wind has the right to intervene as long as its interests *may* not be adequately represented by the existing parties.  Fed. R. Civ. P. 24(a)(2) (emphasis added).  As the D.C. Circuit has explained, "a movant 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation.'"  *Crossroads*, 788 F.3d at 321 (quoting *Am. Tel. & Tel. Co.*, 642 F.2d at 1293).  This requirement is "not onerous" and represents a "low" threshold. *Id.* (quoting *Fund for Animals*, 322 F.3d at 735, 736 n.7).

Although Federal Defendants – agencies that have issued approvals for the Project's construction and operation – and SouthCoast Wind nominally share the same objective to defend these approvals, the broad public interest the government defends is distinct from the more specific interests of SouthCoast Wind.  Federal Defendants do not share SouthCoast Wind's interest in meeting its contractual obligations and protecting its extensive financial investment in the Project. *See* Brown Decl. ¶¶ 7 , 10, 33-36.  The Federal Defendants' "general interest" in seeing their decisions upheld "does not mean [the parties'] particular interests coincide so that representation by the agency alone is justified." *Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001); *see also Dimond*, 792 F.2d at 192-93 ("A government entity such as the District of Columbia is charged by law with representing the public interest of its citizens.  State Farm, on the other hand, is seeking to protect a more narrow and 'parochial' financial interest not shared by the citizens of the District of

Columbia.").

In these circumstances, where an entity has committed over $600 million dollars in a project and a court-imposed delay or vacatur of agency approvals could result in the Project's failure, courts have recognized that the government does not adequately represent the specific, narrower economic and other interests of private parties that may be affected by the litigation. *See, e.g.*, *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (pesticide registrant's "economic and proprietary interests" not shared by EPA regulators); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977) (reversing denial of intervention by rubber and chemical companies because the regulations at issue would have direct impact on their businesses and the decision would likely involve "questions of very technical detail and data"). That is particularly true when – as here – a private-party intervenor asserts a "financial stake in the outcome" of the action. *Id.*; *see also Fund for Animals*, 322 F.3d at 736-37 & n.9 (collecting cases recognizing that "governmental entities do not adequately represent the interests of aspiring intervenors"). Federal Defendants may not be able or motivated to raise the same defenses as SouthCoast Wind.

Thus, the existing parties are inadequate representatives of SouthCoast Wind's interests in this case. Given the foregoing, SouthCoast Wind is entitled to intervene as of right in this matter pursuant to Rule 24(a)(2).

## B. Alternatively, the Court Should Grant Permissive Intervention

In the alternative, the Court should grant SouthCoast Wind permissive intervention because it has met the requirements of Rule 24(b). Under that rule, upon timely application, a would-be party can intervene "when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2). In applying this discretionary standard, courts consider whether the applicant has "(1) an

independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

SouthCoast Wind meets the standard for permissive intervention under Rule 24(b) for many of the same reasons that it is entitled to intervene as of right. First, this Court has an independent basis for subject matter jurisdiction over the defenses that SouthCoast Wind will advance. Because Plaintiff's claims arise under the laws of the United States – the NHPA, NEPA, and the APA – and SouthCoast Wind has Article III standing (*see supra* Section III.A.1), this Court has original jurisdiction.

Second, as explained above, SouthCoast Wind's motion is timely. *See supra* Section III.A.2. Intervention at this earliest stage of litigation will not delay the proceeding, and SouthCoast Wind is prepared to meet any schedule set by this Court.

Third, SouthCoast Wind's defense of the challenged approvals will be determined on common facts and legal principles with the main action. Because SouthCoast Wind will raise defenses directly responsive to Plaintiff's claims, it necessarily will assert a claim or defense in common with the main action and satisfies the common question of law or fact requirement.

Permissive intervention is also appropriate because SouthCoast Wind's participation in this case will significantly contribute to full development of the underlying factual issues in the suit. As the Project developer, SouthCoast Wind was a key participant in all of the approval processes implicated by Plaintiff's allegations of harm in this case and is uniquely positioned to provide relevant information to the Court to address the merits and ramifications of Plaintiff's arguments. As a result, SouthCoast Wind's participation in this action as an intervenor will promote a fair and full adjudication of Plaintiff's claims.

## IV.    CONCLUSION

For the foregoing reasons, SouthCoast Wind respectfully requests that the Court grant its motion to intervene as of right or, in the alternative, to grant permissive intervention.


Date: April 8, 2025                                  Respectfully submitted,


                                                     HOLLAND & KNIGHT LLP


                                                     By: */s/ Rafe Petersen*
                                                     Rafe Petersen (Bar ID No: 465542)
                                                     Alexandra E. Ward (Bar ID No. 1687003)
                                                     800 17th Street NW, Suite #1100
                                                     Washington, D.C. 2006
                                                     Rafe.Petersen@hklaw.com
                                                     T: (202) 419-2481
                                                     F: (202) 955-5564

                                                     *Counsel for Proposed Defendant-Intervenor*
                                                     *SouthCoast Wind Energy LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2025, I electronically filed the foregoing with the Clerk of

the Court via the CM/ECF system, which will send notification of such filing to all counsel of

record.

HOLLAND & KNIGHT LLP

By: *<u>/s/ Rafe Petersen</u>*

Rafe Petersen (Bar ID Number: 465542)
Alexandra E. Ward (Bar ID Number: 1687003)
800 17th Street NW, #1100
Washington, D.C. 20006
Rafe.Petersen@hklaw.com
T: (202) 419-2481
F: (202) 955-5564

*Counsel for Proposed Defendant-Intervenor*
*SouthCoast Wind Energy LLC*