UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOWN AND COUNTY OF NANTUCKET, MASSACHUSETTS, <br><br> *Plaintiff,* <br><br> v. <br><br> DOUGLAS BURGUM, Secretary of the Interior; U.S. DEPARTMENT OF THE INTERIOR; BUREAU OF OCEAN ENERGY MANAGEMENT, <br><br> *Defendants,* <br><br> and <br><br> SOUTHCOAST WIND ENERGY LLC, <br><br> *Proposed Defendant-Intervenor.* | Case No.: 1:25-cv-00906 |

**DECLARATION OF MICHAEL BROWN IN SUPPORT OF SOUTHCOAST WIND ENERGY LLC'S MOTION TO INTERVENE AS A DEFENDANT**

Pursuant to 28 U.S.C. § 1746(2), I, Michael Brown, hereby declare:

1. I am employed by OW North America LLC ("Ocean Winds") as the Country Manager and simultaneously I serve as the Chief Executive Officer of SouthCoast Wind Energy LLC ("SouthCoast Wind") which is developing the commercial-scale wind farm and export cable corridors (together, the "Project") at issue in this matter. I have been employed at Ocean Winds since its inception, and have been the Country Manager for North America since 2022. I assumed the role of Chief Executive Officer of SouthCoast Wind in March of 2024 after previously serving as the Chief Financial Officer and Chief Executive Officer from 2019 through 2022. Collectively I have worked on the Project for approximately six years, and I have over 15 years of professional experience in the renewable energy field. Ocean Winds and its affiliate companies develop, construct, and operate offshore wind farms that provide energy products to their customers. Prior to joining

SouthCoast Wind as Chief Financial Officer in 2019, I was the UK Finance Director for EDP Renewables's Moray East Project, a 100 WTG, 950-MW offshore wind project off the northeast Scottish coast. I led the Contract for Difference ("CfD") bidding process, resulting in Moray East winning a 2017 UK CfD at a record-low price. I continued leading the team to close project financing in December 2018. As CEO of the Project and of Ocean Winds, I am and have been involved in, and aware of, negotiation and management of commercial and real estate agreements; local, state, and federal permitting; stakeholder and market affairs management; cable and interconnection facility siting; project layout and design; and site investigation activities for the Project. I am therefore personally familiar with SouthCoast Wind's environmental permitting and development history. I execute this Declaration in support of SouthCoast Wind's Motion to Intervene in this case based on my personal knowledge of the matters referred to herein and, if called upon to do so, could and would testify truthfully thereto.

**Project Description**

2. The Project will contribute to the Federal government's, Massachusetts's, and Rhode Island's goals for domestic, clean, renewable energy, and Massachusetts's and Rhode Island's greenhouse gas reduction and climate goals.

3. The Project will supply renewable energy and jobs to Massachusetts and Rhode Island. Overall, the Project will create more than 5,000 full-time equivalent job-years (direct, indirect, and induced effects of the Project) during Project construction, and an estimated 21,000 full-time equivalent job-years for the Project's operations and maintenance work.[1]

4. SouthCoast Wind is a wholly-owned subsidiary of Ocean Winds. SouthCoast Wind was formerly known as Mayflower Wind Energy LLC, and formally changed its name in January

---

[1] *See* Economic Development Benefits Report, Table 4
https://app.box.com/s/lufmih6sp2d5your2hwkqie2vn4ftf2f

2023. SouthCoast Wind and its affiliates have worked to obtain the Bureau of Ocean Energy Management ("BOEM") lease and permits at issue, and have been developing the Project for over seven years.

5.     The Project consists of up to 141 wind turbine generators ("WTGs") and up to two offshore substation platforms ("OSPs") forming an approximately 2,400-megawatt ("MW") commercial-scale offshore wind energy facility that will be constructed on BOEM Renewable Energy Lease No. OCS-A 0521 (the "Lease Area"). The Lease Area is located in the Atlantic Ocean approximately 23 miles south of Nantucket, Massachusetts, and approximately 60 miles from Rhode Island, on the Outer Continental Shelf ("OCS") in federal waters. There are presently over 80 people employed by Ocean Winds actively working on the development of the Project.

6.     The Project is proud of its more than five years of direct engagement in communities across New England. SouthCoast Wind has consulted with the fishing industry, Native American Tribes, municipal government officials, landowners, state legislators, environmental groups, academic institutions, community groups, chambers of commerce, trade associations, economic development groups, regional science organizations and more. These engagements will, where appropriate, continue throughout the life of the Project. The Project has maintained public awareness of development and permitting activities through robust online resources (Project website, newsletters, mariner updates, fact sheets, project hotline, etc.), virtual and in person public forums, and consistent and transparent communication with state and local governments. Through the development process, SouthCoast Wind has become an active partner, community member, and supporter of diverse local initiatives in New England.

7.     SouthCoast Wind has invested significant time and effort in the Project as evidenced by capital investments to secure:

    a. Rights to OCS-A 0521 through competitive leasing process;

    b. Land rights at the former coalfired plant at Brayton Point for substation;

    c. Interconnection rights to deliver contracted offtake to ISO-NE;

    d. Major contracts for HVDC assets necessary for the Project;

    e. Exclusivity rights for inter array cable supply;

    f. Exclusivity rights for export cables supply;

    g. Land rights for the New Bedford Marine Commerce Terminal;

    h. Exclusivity rights for Operation and Maintenance facilities;

    i. Exclusivity rights for transportation and installation services for major components;

    j. Host Community Agreement with Portsmouth Rhode Island; and

    k. Land rights for cable crossing of Aquidneck Island.

8. Once fully operational, the Project will deliver approximately 2,400 MW of clean energy, enough to power more than 1.4 million homes, eliminating up to approximately 4 million tons of carbon emissions annually, and over 140 million tons of carbon emissions over the Project's lifetime (estimated for this calculation as 35 years).

9. In 2024, SouthCoast Wind was selected by two states to enter into long term contracts ("power purchase agreements" or "PPAs") for a combined approximately 1,287 MW of generating capacity: (1) a PPA with Massachusetts for approximately 1,087 MW; and (2) a PPA with Rhode Island for approximately 200 MW. SouthCoast Wind expects contract negotiations to be concluded by June 30, 2025.

**Project Investments to Date**

10. SouthCoast Wind seeks to intervene in this action to protect its significant protectable interests in the Project. The following is offered to demonstrate SouthCoast Wind's investment in the Project across our supply chain, communities, and permitting.

4

11. To date, SouthCoast Wind has incurred substantial financial obligations developing, permitting, engineering, procuring, fabricating, and preparing for construction of the Project. In fact, SouthCoast Wind has made commitments exceeding approximately $600 million in developing the Project.

12. SouthCoast Wind has invested significant resources in the extensive, multi-year planning and development process for the Project, including through the development of voluminous technical and scientific submissions to federal, state, and local agencies and participating in public consultation and review processes.

13. On December 13-14, 2018, BOEM conducted a competitive lease sale for commercial leasing for wind power on the OCS offshore Massachusetts after conducting a thorough environmental review and issuing an environmental assessment. The lease areas offered in this competitive sale process were the result of an extended public planning process, including consultation under Section 106 of the National Historic Preservation Act ("NHPA") regarding the issuance of the commercial lease and approval of site assessment activities. Mayflower Wind Energy LLC won lease OCS-A 0521. Mayflower Wind Energy LLC subsequently changed its name to SouthCoast Wind Energy LLC in January 2023.

14. SouthCoast Wind submitted a Site Assessment Plan ("SAP") as required by BOEM regulations to conduct site assessment activities in the Project lease area, and BOEM issued its final approval for the SAP on May 26, 2020.[2]

15. SouthCoast Wind and its affiliates conducted extensive surveys of the Project area pursuant to the approved SAP and subsequent survey plans to understand and characterize the environment and the Project site.

---

[2] *See* SouthCoast Wind (formerly Mayflower Wind), BOEM, https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-formerly-mayflower-wind. These included meteorological, bathymetric, geological, geotechnical, geophysical, biological, archaeological, hazard, and oceanographic surveys.

5

16.     In February 2021, SouthCoast Wind submitted a detailed Construction and Operations Plan ("COP") to BOEM, describing the planned facilities and construction and operation activities for the Project. SouthCoast Wind updated the COP seven times to include updated technical and environmental information, and to respond to agency and public comments. The final version of the COP is thousands of pages long, including appendices.[3]

17.     On November 1, 2021, BOEM issued a Notice of Intent ("Notice") to prepare an Environmental Impact Statement ("EIS") under the National Environmental Policy Act ("NEPA") for its review of the Project COP. That Notice began a more than three-year period of environmental review by the federal government involving SouthCoast Wind, eleven federal agencies, three state cooperating agencies, and an extensive array of other stakeholders, ranging from the fishing industry, to local communities, to American Indian tribes and historic preservation organizations. The draft EIS ("DEIS") was published on February 17, 2023, and after accepting and responding to public comments, BOEM published the final EIS ("FEIS") on November 15, 2024.[4]

18.     Appendix A to the FEIS describes the extensive consultations and public involvement BOEM undertook in the process of its NEPA review, as well as the approximately 37 required federal, state, and local consultations and approvals required for the Project.

19.     BOEM's NEPA process included an extended, 60-day, public scoping process where interested parties were invited to offer feedback and identify issues and potential alternatives for BOEM to consider in the EIS. BOEM held an additional three public meetings on the DEIS. SouthCoast Wind attended all of the meetings. SouthCoast Wind also submitted comments in the NEPA process.

---

[3] *See* Notice of Availability of a Final Environmental Impact Statement for SouthCoast Wind Energy LLC's Proposed SouthCoast Wind Energy Project Offshore Massachusetts and Rhode Island, 89 Fed. Reg. 90316 (Nov. 15, 2024).
[4] *See* SouthCoast Wind (formerly Mayflower Wind), Environmental Review, BOEM, https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-formerly-mayflower-wind.

6

20. On December 20, 2024, BOEM issued a Record of Decision ("ROD") documenting the Department of the Interior's decision to approve, with conditions, the COP.[5] BOEM subsequently issued the COP approval for the Project on January 17, 2025.[6]

21. Extensive additional time, effort, and financial resources were also expended to secure other required permits and approvals for the Project.

**The Extensive Historic Property Analysis and Consultation**

22. As required by BOEM regulations, SouthCoast Wind retained cultural resource specialists to conduct required assessments and create mitigation, monitoring, and historic property treatment plans as applicable and appropriate. R. Christopher Goodwin and Associates, Inc. was retained as the Project's Qualified Marine Archaeologist and to conduct extensive archaeological assessments and produce a Marine Archaeological Resources Assessment ("MARA") Report for the Project. AECOM and The Public Archaeology Laboratory, Inc. were retained to prepare various Terrestrial Archaeological Resources Assessments ("TARAs"). SouthCoast Wind also worked with both AECOM and Tetra Tech, Inc to perform additional surveys and analyses to support the NEPA and NHPA processes, including the following reports:

    a. "Visual Impact Assessment (VIA)" (2024);

    b. "Onshore Visual Impact Assessment – Brayton Point" (2024);

    c. "Analysis of Visual Effects to Historic Properties" (2023);

    d. "Analysis of Visual Effects to Historic Properties – Brayton Point" (2024);

    e. "Historic Properties Treatment Plan for Nantucket Historic District" (2024); and

---

[5] *See* Record of Decision, SouthCoast Wind Project Construction and Operations Plan, BOEM (December, 20, 2024) https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Record-of-Decision-SouthCoast-Wind-OCS-A-0521.pdf.

[6] *See* Conditions of Construction and Operations Plan Approval, Lease Number OCS-A 0521, BOEM (Jan. 17, 2025) https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SouthCoast%20Wind%20Conditions%20of%20COP%20Approval.pdf.

    f. "Historic Properties Treatment Plan for Nantucket Sound Traditional Cultural Place" (2024).

23. In addition, BOEM retained ICF to prepare a "Cumulative Historic Resources Visual Effects Analysis" (2023).[7]

24. BOEM's NHPA Section 106 consultation process began in the Fall of 2021. Between September 29, 2021 and November 1, 2021, BOEM extended invitations to consult under NHPA Section 106 to 81 potential consulting parties. Additional consulting parties were invited through the consultation process, as they were identified. BOEM convened five consulting party meetings on July 7, 2022, March 16, 2023, January 24, 2024, July 15, 2024, and October 8, 2024. SouthCoast Wind participated in every consultation meeting. SouthCoast Wind also engaged in additional outreach directly to consulting parties to discuss potential mitigation measures. SouthCoast Wind met with Nantucket stakeholders, including the Town of Nantucket and its counsel multiple times between 2020 and 2024. SouthCoast Wind met with the federal Advisory Council on Historic Preservation ("Advisory Council") in July and November 2024.

25. BOEM circulated documents and analyses to consulting parties and consulted on the Area of Potential Effect ("APE") for the Project and identification of historic properties over the course of the three-year Section 106 consultation process.

26. BOEM circulated a draft Finding of Adverse Effect ("FoAE") in February 2023 and draft Memorandum of Agreement ("MOA"), both of which were refined over time with additional consulting party comments and consultation meetings. BOEM circulated a final FoAE in September 2024.[8] The FoAE discussed the process that was used to identify historic properties in the Project's

---

[7] *See* Cumulative Historic Resources Visual Effects Analysis (CHRVEA) - Mayflower Wind Project, ICF, (Jan. 2023) https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Mayflower_CHRVEA_Public_Redacted_508.pdf.

[8] The FoAE was incorporated as Appendix I to the FEIS. *See* Finding of Adverse Effect for the SouthCoast Wind COP, BOEM, https://www.boem.gov/sites/default/files/documents/renewable-energy/SouthCoast_FEIS_AppI_FindingAdverseEffect_20240925_Clean_508.pdf

8

APE, including properties in the "viewshed" from which renewable energy structures might potentially be visible, whether located onshore or offshore (the "Visual APE"). The final MOA memorializes agreements by the signatories to adopt specific avoidance, minimization, and mitigation measures and states that "[e]xecution of [the] MOA by BOEM, Massachusetts SHPO, Rhode Island SHPO, and the ACP and implementation of its terms demonstrates that BOEM has taken into account the effects of [the] undertaking on historic properties . . ."

27. BOEM determined that the Project would have visual adverse effects on four historic properties in Massachusetts. Of these properties, one, the Nantucket Historic District, is a National Historic Landmark ("NHL"), two are Traditional Cultural Places ("TCPs"), and one is an above ground structure (Oak Grove Cemetery). BOEM determined that the other remaining historic properties in Rhode Island and Massachusetts within the Project's Visual APE would not be adversely affected (or would not be affected at all). Additionally, the FoAE described BOEM's compliance with NHPA Section 110(f) for the one NHL that BOEM determined would be adversely affected by the Project. In the FoAE, BOEM confirmed that it gave "a higher level of consideration to minimizing harm" to the one NHL, and that it invited NPS (as delegated by the Secretary of the Interior) and the federal Advisory Council to be consulting parties and notified them of its determination of adverse effect to the NHL.

28. The FoAE determined that the magnitude of the Project's visual effects on the one NHL would be minimized by the distance between proposed Project WTGs and the NHL, as well as other environmental factors, including weather and atmospheric conditions, that limit views of the Project WTGs from the NHL. The FoAE further concluded that while the Project would affect the maritime setting of the NHL, it would not affect other character-defining features or aspects of the NHLs' integrity. BOEM concluded that the Nantucket Historic District, should the undertaking proceed, would still illustrate its regional and national significance, and continue to exemplify its national importance.

29. Both of the SHPOs concurred with or did not object to BOEM's FoAE.

30. BOEM produced and signed a final MOA on November 12, 2024, which was agreed to and executed by BOEM, the Massachusetts SHPO, the Rhode Island SHPO, the Advisory Council, the U.S. Army Corps of Engineers, the DOI Bureau of Safety and Environmental Enforcement, the Town of Swansea, Massachusetts, the Oak Grove Cemetery Association and SouthCoast Wind by December 18, 2024.[9]

31. The final MOA details avoidance, minimization, mitigation, and monitoring measures to avoid and resolve adverse effects on historic properties, including cumulative visual adverse effects to which the Project would be additive.[10] Specifically, to minimize adverse impacts to historic properties, including the NHL, TCPs, ASLFs, and marine and terrestrial archaeological resources, the MOA required that BOEM include mitigation measures as conditions of approval for the Project COP, including: (1) uniform WTG design, height, and rotor diameter for each project to be built out within the Lease Area to reduce visual contrast and decrease visual clutter; (2) uniform WTG spacing to decrease visual clutter; (3) the use of a paint color to the WTGs no lighter than Pure White (RAL 9010) and no darker than Light Grey (RAL 7035); and (4) the use of an aircraft detection lighting system to limit the time during which WTG lights are on and visual from affected properties, which SouthCoast Wind estimates will only be active for approximately four minutes and 46 seconds over the course of a year, once the Project is in operation.

32. Further, included as attachments to the MOA are Historic Property Treatment Plans ("HPTPs") that SouthCoast Wind is required to implement to mitigate visual adverse effects to historic properties. The proposed mitigation measures in the HPTPs serve to support other means of

---

[9] *See* Memorandum of Agreement among the Bureau of Ocean Energy Management, the State Historic Preservation Officers of Massachusetts and Rhode Island, Southcoast Wind Energy LLC, and the Advisory Council on Historic Preservation Regarding the Southcoast Wind Project, December 2024 ("MOA").

[10] MOA at 5.

10

conveying the significance of the historic properties and to minimize the harm to NHLs, including documentation, interpretation, and dissemination of information and property preservation planning and activities. Under the terms of the MOA, SouthCoast Wind is required to provide up to $1.530 million to support avoidance, minimization, and mitigation of all adverse effects to historic properties from the Project. In executing the MOA, the full suite of mitigation measures was agreed to by BOEM, both SHPOs, and the Advisory Council as sufficient to resolve adverse effects.

**Potential Impairment of SouthCoast Wind's Significant Interests in the Project Approvals**

33. SouthCoast Wind has committed over $600 million to date to plan, permit, develop, and construct this Project.

34. SouthCoast Wind has entered into contracts for the manufacture and transport of project components and for the chartering of specialized vessels. SouthCoast and its sponsors have taken other steps in reliance on the approvals challenged here to secure production slots and capacity reservations in order to deliver on the timelines promised in the bid leading to the award of offtake agreements. As discussed, SouthCoast Wind has been selected by the states of Massachusetts and Rhode Island to contract for PPAs for a total combined approximately 1,287 MW of generating capacity based on a specified Commercial Operation Date evaluated by both Massachusetts and Rhode Island. SouthCoast Wind's substantial financial and delivery obligations under these contracts and PPAs would be almost certainly forced into default if the Project timeline were delayed by any of the relief sought in this lawsuit. For example, if the Project cannot achieve commercial operations within the timeframe established under the PPAs as bid, SouthCoast Wind faces loss of the PPAs, or if executed, significant default damages, further increased contract security requirements, and likely termination of its PPAs.

35. As the Project developer, OCS lessee, holder of many state and federal permits, and owner of real estate rights from governmental and private entities, SouthCoast Wind seeks to protect

11

its significant financial investments in the Project as well as its significant investment of time in the administrative processes supporting the challenged approvals. SouthCoast Wind and its affiliates' substantial investments are at risk if Plaintiff succeeds in blocking the Project.

36. As a result of its substantial investments in the Project and the related governmental approvals, SouthCoast Wind has an interest in preserving and defending the approvals that Plaintiff has challenged in this case, which SouthCoast is concerned would be impaired if it were not permitted to intervene.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 8, 2025.

DocuSigned by:

*Michael Brown*

Michael J. Brown