## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TOWN AND COUNTY OF NANTUCKET, MASSACHUSETTS,** | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-00906-TSC |
| **DOUG BURGUM, et al.,** | |
| Defendants. | |

## <u>FEDERAL DEFENDANTS' MOTION AND MEMORANDUM</u>
## <u>IN SUPPORT OF VOLUNTARY REMAND AND STAY</u>

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

    I.    Statutory Background ............................................................................................. 1

    II.    Factual Background ................................................................................................ 2

        A.    The SouthCoast Wind Project and BOEM's review ................................... 2

        B.    BOEM's review of existing leases ............................................................... 4

        C.    Lawsuit challenging SouthCoast Wind Project approvals .......................... 5

LEGAL STANDARD ............................................................................................................. 5

ARGUMENT .......................................................................................................................... 6

    I.    The Court should grant Interior's request for remand ........................................... 6

        A.    BOEM's ongoing re-evaluation of the COP is a "substantial and legitimate" reason that justifies remand ...................................................... 6

        B.    A remand would conserve party and court resources ................................. 8

        C.    Remand would not unduly prejudice Plaintiffs or Defendant-Intervenor ................................................................................................... 9

    II.    The Court should stay the case .......................................................................... 10

CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Env't Ctr. v. Haaland*,
No. 20-CV-00187, 2022 WL 1556028 (D. Alaska May 17, 2022) ........................................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................. 12

*Citizens Against the Pellissippi Parkway Extension, Inc. v. Mineta*,
375 F.3d 412 (6th Cir. 2004) ...................................................................................................... 9

*Clinton v. Jones*,
520 U.S. 681 (1997) .................................................................................................................. 10

*Code v. McHugh*,
139 F. Supp. 3d 465 (D.D.C. 2015) ........................................................................................ 6, 7

*Ctr. for Biological Diversity v. Raimondo*,
No. 18-112 (JEB), 2023 WL 7385563 (D.D.C. June 5, 2023) ........................................... 10, 11

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
563 F.3d 466 (D.C. Cir. 2009) ................................................................................................... 1

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ........................................................................................................................ 8

*Ethyl Corp. v. Browner*,
989 F.2d 522 (D.C. Cir. 1993) .................................................................................................... 6

*Friends of Animals v. Williams*,
628 F. Supp. 3d 71 (D.D.C. 2022) .................................................................................... 8, 9, 10

*Limnia, Inc. v. U.S. Dep't of Energy*,
857 F.3d 379 (D.C. Cir. 2017) ................................................................................................. 6, 8

*Marcum v. Salazar*,
694 F.3d 123 (D.C. Cir. 2012) .................................................................................................. 10

*NAACP v. Trump*,
298 F. Supp. 3d 209 (D.D.C. 2018) ............................................................................................ 8

*Nat. Res. Def. Council v. Kempthorne*,
No. 05-CV-01207 LJO-GSA, 2015 WL 3750305 (E.D. Cal. June 15, 2015) .................... 11, 12

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
No. 13-cv-00059-MCE, 2013 WL 4094777 (E.D. Cal. Aug. 13, 2013) ............................ 11, 12

*USA Inc. v. United States*,
   254 F.3d 1022 (Fed. Cir. 2001) ................................................................. 6, 7

*Utah v. EPA*,
   No. 23-1157, 2025 WL 1354371 (D.C. Cir. May 2, 2025) ...................................... 11

*Util. Solid Waste Activities Grp. v. EPA*,
   901 F.3d 414 (D.C. Cir. 2018) ............................................................. 6, 7, 8

*Wallish v. U.S. Dep't of Def.*,
   No. 24-cv-00616 (TSC), 2025 WL 1580702 (D.D.C. June 4, 2025) ........................... 6

**Statutes**

43 U.S.C. § 1331(a) ............................................................................. 1

43 U.S.C. § 1337 ........................................................................... 3, 4, 5

**Regulations**

30 C.F.R. § 585.102(a) ........................................................................ 2

30 C.F.R. § 585.200(a)(2) ..................................................................... 2

30 C.F.R. § 585.203 .......................................................................... 2

30 C.F.R. § 585.600 .......................................................................... 2

**Other Authorities**

90 Fed. Reg. 8363 (Jan. 20, 2025) ............................................................ 4

## INTRODUCTION

The Department of the Interior Bureau of Ocean Energy Management ("BOEM") seeks a remand of its approval of the Construction and Operations Plan ("COP") for the SouthCoast Wind Project. That approval represents the final agency action that Plaintiffs challenge in this case. BOEM is reviewing its approvals associated with the Project and has determined, based on its review to date, that it wishes to reconsider its COP approval. That is reason enough to grant a remand. Doing so would also promote judicial economy and, because no Project construction is active or imminent, would not unduly prejudice Defendant-Intervenor. Nor would it prejudice Plaintiffs, who do not oppose a remand here.[1]

The Court should also stay the litigation until BOEM's reconsideration is complete. To do otherwise would expend party and judicial resources litigating the merits of a COP approval that BOEM is actively reconsidering. After its reconsideration proceedings, BOEM likely will take a further agency action, and that action may affect—and possibly moot—Plaintiffs' claims. To avoid potentially needless or wasteful litigation, the Court should remand the COP approval and enter a stay.

## BACKGROUND

### I.    Statutory Background

The Outer Continental Shelf ("OCS") consists of the submerged lands beneath the ocean, generally from 3 to 200 miles seaward of the coastline. *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 472 (D.C. Cir. 2009); 43 U.S.C. § 1331(a). Under the Outer Continental Shelf Lands Act ("OCSLA"), the United States holds these lands as a "vital national resource

---

[1] Federal Defendants conferred with counsel for Plaintiffs and Defendant-Intervenor SouthCoast Wind about this motion. Plaintiffs do not oppose. SouthCoast Wind opposes.

reserve" that "should be made available for expeditious and orderly development, subject to environmental safeguards." *Id.* § 1332(3).

To that end, Interior, in consultation with other federal agencies, may grant a lease on the OCS for the purpose of renewable wind energy production. *Id.* § 1337(p)(1)(C); 30 C.F.R. §§ 585.203, 585.206(a), 585.210, 585.211, 585.215-585.216 (2025).[2] Under BOEM's renewable energy regulations and the standard OCS lease terms, a lease issued under OCSLA does not itself authorize development. 30 C.F.R. § 585.200(a)(2). A lessee must first assess the site, and then it must obtain BOEM's approval of a site assessment plan and COP. 30 C.F.R. §§ 585.600, 585.605-585.613, 585.620-585.628.

When approving a project under OCSLA, BOEM must ensure that "any activit[y]" it authorizes is "carried out in a manner that provides for" twelve enumerated requirements, including: safety; protection of the environment; conservation of natural resources; protection of national security interest; "prevention of interference with reasonable uses (as determined by the Secretary)" of the "exclusive economic zone, the high seas, and the territorial seas;" and consideration of other uses of the sea and seabed, including the use of the area for fishing and marine navigation. 43 U.S.C. § 1337(p)(4)(A)-(L); 30 C.F.R. § 585.102(a).

## II.    Factual Background

### A.    The SouthCoast Wind Project and BOEM's review

This case challenges BOEM's approvals associated with the SouthCoast Wind Project, a proposed commercial-scale offshore wind energy facility to be constructed on the OCS off the

---

[2] Unless otherwise stated, all references to the C.F.R. are to the edition last updated in September 2025.

coast of Massachusetts.[3] The Project would consist of up to 147 wind turbine generators and would provide energy to Massachusetts, Connecticut, and/or Rhode Island. ROD at 10. It would be developed in two phases: Project 1 (which refers to the development in the northern part of the lease area and associated interconnection), and Project 2 (which refers to the development in the southern portion of the lease area and associated interconnection). *Id.* at 9.

In December 2018, SouthCoast Wind was awarded a lease through a competitive leasing process. Attach. 1, Declaration of Matt Giacona ¶ 4. The lease gave SouthCoast Wind the exclusive right to develop a COP for activities within the leasing area, but it did not authorize activities within the lease area unless SouthCoast Wind submitted, and BOEM approved, a COP. *Id.* ¶ 5.

SouthCoast Wind submitted an initial COP in February 2021, and an updated COP in July 2024.[4] On December 20, 2024, BOEM signed a ROD announcing its decision to approve with conditions SouthCoast Wind's COP. Giacona Decl. ¶ 6; ROD App'x B at 36. In the ROD, BOEM determined the Project would comply with its regulations and would be "carried out in a manner that provides for the factors in OCSLA subsection 8(p)(4)." ROD App'x B at 36.

In approving the COP, BOEM relied on M-Opinion 37067 ("Anderson Opinion"), a 2021 legal opinion from Robert T. Anderson—then-Solicitor for the Department of the Interior—interpreting 43 U.S.C. § 1337(p)(4).[5] *See* Ex. E, Anderson Opinion. *See also* ROD at 7 (stating that

---

[3] Ex. A, BOEM, Record of Decision, SouthCoast Wind Project COP ("ROD") 9-10 (2024), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Record-of-Decision-SouthCoast-Wind-OCS-A-0521.pdf.

[4] BOEM, Final Environmental Impact Statement ("FEIS") 1-3 (2024), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/South-Coast_FEIS_Volume%201.pdf.

[5] M-Opinions "constitute legal interpretations that are binding on all Department officials, until such time as they are repealed or modified by either the Secretary [of the Interior], Deputy Secretary [of the Interior], or the Solicitor." Officer of the Solicitor, Dep't of the Interior, *Mem. Subject:*

§ 1337(p)(4) "does not require the Secretary to ensure that the goals are achieved to a particular degree, and she retains wide discretion to determine the appropriate balance between two or more goals that conflict or are otherwise in tension." (quoting Anderson Opinion)); Giacona Decl. ¶ 6. The Anderson Opinion withdrew M-Opinion 37059 ("Jorjani Opinion")—issued in December 2020 by then-Solicitor Daniel H. Jorjani—which addressed the weighing of impacts under 43 U.S.C. § 1337 on other uses of the OCS. Anderson Opinion 2.

On January 17, 2025, BOEM sent letters informing SouthCoast Wind that it approved the COP with conditions. Giacona Decl. ¶ 8.[6]

B. BOEM's review of existing leases

On January 20, 2025—three days after BOEM issued the COP approval here—President Trump issued Presidential Memorandum, *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* ("Presidential Wind Memo"). Ex. B, 90 Fed. Reg. 8363 (Jan. 20, 2025); Giacona Decl. ¶ 9. Section 1 of the Presidential Wind Memo directs the Secretary of the Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases, identifying any legal bases

---

*M-Opinion Review* (2025), https://www.doi.gov/sites/default/files/documents/2025-03/m-opinion-suspension-review0.pdf

[6] Because the SouthCoast Wind Project will be developed in two parts, BOEM sent separate COP approval letters for Project 1 and Project 2. The letters are available on BOEM's website. BOEM, Dep't of the Interior, Letter to Mr. Michael Brown CEO of SouthCoast Wind Energy LLC (2025), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SouthCoast%20Wind%20OCS-A%200521%20COP%20Approval%20Letter%20-%20Operator%20I.pdf (Project 1); BOEM, Dep't of the Interior, Letter to Mr. Michael Brown CEO of SouthCoast Wind Energy LLC (2025), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SouthCoast%20Wind%20OCS-A%200521%20COP%20Approval%20Letter%20-%20Operator%20II.pdf (Project 2).

for such removal, and submit a report with recommendations to the President." 90 Fed. Reg. at 8363; Giacona Decl. ¶ 9.

In May 2025, Gregory Zerzan, the Acting Solicitor of the Department of the Interior, issued M-Opinion 37086 ("Zerzan Opinion"). Ex. D, Zerzan Opinion; Giacona Decl. ¶ 12. That opinion withdrew the Anderson Opinion and reinstated the Jorjani Opinion. Zerzan Opinion 3; Giacona Decl. ¶ 12. The Zerzan Opinion calls for a re-evaluation of agency actions that relied on the Andersen Opinion's interpretation of 43 U.S.C. § 1337(p)(4). Zerzan Opinion 3; Giacona Decl. ¶ 12.

C. Lawsuit challenging SouthCoast Wind Project approvals

In March 2025, Plaintiffs sued, Compl., Dkt. No. 1, alleging that BOEM's approvals related to the SouthCoast Wind Project violated the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and the Administrative Procedure Act ("APA"). Federal Defendants have not yet answered the Complaint, and the Court has not entered a case management schedule.[7]

## LEGAL STANDARD

"Administrative agencies have the inherent power to reconsider their own decisions through a voluntary remand." *Wallish v. U.S. Dep't of Def.*, No. 24-cv-00616 (TSC), 2025 WL

---

[7] On August 29, 2025, Federal Defendants moved to defer their responsive pleading until either (i) twenty-one days after the Court rules on Defendants' instant motion for remand and stay, or (ii) if the Court grants a stay, until twenty-one days after the stay is lifted. Dkt. No. 17. As we explained in that motion, deferring the responsive pleading deadline promotes judicial efficiency because Interior is reconsidering the agency action challenged in this lawsuit. *Id.* ¶ 4. The outcome of that reconsideration may affect Plaintiffs' claims here, and thus may affect or even obviate the need for a responsive pleading. *Id.* Rather than expend resources responding to a complaint that may be affected or even mooted by Interior's ongoing reconsideration, Federal Defendants maintain that the responsive pleading deadline should be deferred at least until this Court can consider and rule on the instant motion seeking remand and a stay. SouthCoast Wind opposed the motion to defer the responsive pleading deadline, *see* Dkt. No. 18, and Federal Defendants filed a reply in support of the motion on September 2, *see* Dkt. No. 19. That motion remains pending.

1580702, at *2 (D.D.C. June 4, 2025). Even without confessing error, an "agency may request a remand … to reconsider its previous position." *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018) (citation omitted). Courts "generally grant an agency's motion to remand so long as 'the agency intends to take further action with respect to the original agency decision on review.'" *Id.* (quoting *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017)). District courts have broad discretion to grant or deny remands and may deem a remand inappropriate "if the agency's request appears to be frivolous or made in bad faith." *Wallish*, 2025 WL 1580702, at *2. But courts "commonly" grant remands, recognizing that they promote judicial economy, "preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993).

## ARGUMENT

**I.    The Court should grant Interior's request for remand.**

A.    BOEM's ongoing re-evaluation of the COP is a "substantial and legitimate" reason that justifies remand.

The Court should remand to the agency because BOEM is reconsidering the COP approval that forms the basis of this action. Remand is appropriate where, as here, an agency has identified a "substantial and legitimate" concern about the challenged decision. *Code v. McHugh*, 139 F. Supp. 3d 465, 468 (D.D.C. 2015) (citing *SFK USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)).

Interior's reason for seeking remand easily satisfies that standard. The President directed Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases." Presidential Wind Memo, 90 Fed. Reg. at 8363; Giacona Decl. ¶ 9. Consistent with that Presidential directive, Interior's Acting

Solicitor directed agency staff to re-evaluate agency decisions—such as the COP approval here—that relied on the Anderson Opinion and its interpretation of § 1337(p)(4)(I). *See* Giacona Decl. ¶ 12.

BOEM is undertaking the review that those directives required, including by "re-evaluating the decision to approve the COP" here. Giacona Decl. ¶ 13. Based on its review to date, BOEM has determined that the COP approval may not have fully complied with § 1337(p)(4) of OCSLA. *Id.* BOEM determined that it "may have failed to account for all the impacts that the SouthCoast Wind Project may cause." *Id.* ¶ 14. BOEM also found that the Environmental Impact Statement and other record documents may have "understated or obfuscated impacts that could have subsequently been improperly weighed in making the determinations" under § 1337(p)(4). *Id.* As a result, BOEM's approval of the COP may not have adequately ensured that all activities in the COP will be carried out in a manner that complies with § 1337(p)(4). *Id.*

BOEM's concerns with respect to its OCSLA compliance are "substantial and legitimate," *McHugh*, 139 F. Supp. 3d at 468 (citation omitted). Thus, Interior is seeking a remand so that it may review its COP approval and address any legal defects or other concerns. When it finishes that review (and any associated technical and environmental reviews), BOEM will take a new agency action on the COP: to either approve, disapprove, or approve with conditions. Giacona Decl. ¶ 15. BOEM's intent to take further agency action confirms that remand is appropriate. *Util. Solid Waste Activities Grp.*, 901 F.3d at 436.

In connection with that new agency action, BOEM will also need to consider the sufficiency of its environmental review, including its analysis under NEPA, the NHPA, and the Endangered Species Act. *Id.* Remanding the COP approval to BOEM will allow BOEM to complete its reconsideration of the COP approval and ensure that it is confident in its compliance with OCSLA

and other appliable law. It may also address some of Plaintiffs' concerns, thus obviating the need for further litigation. Those possibilities further support remand without vacatur here. *See, e.g.*, *NAACP v. Trump*, 298 F. Supp. 3d 209, 244 (D.D.C. 2018) (remand without vacatur appropriate where there is a "possibility that the [agency] will be able to substantiate its decision." (alteration in original) (citation omitted)), *affirmed and remanded sub. nom.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020).

B.  <u>A remand would conserve party and court resources.</u>

A remand would also conserve party and judicial resources. Following remand, BOEM will likely issue a new decision that may alter or even moot Plaintiffs' claims. That is so even though Plaintiffs did not bring an OCSLA claim here. *See Friends of Animals v. Williams*, 628 F. Supp. 3d 71, 77 (D.D.C. 2022) (agency's remand need not address substantive issues raised in the complaint, but rather must "reconsider the challenged decision"); *see also N. Alaska Env't Ctr. v. Haaland*, No. 20-CV-00187, 2022 WL 1556028, at *4 (D. Alaska May 17, 2022) ("The suitability of voluntary remand hinges on whether the agency has committed to revisiting 'the original agency decision on review,' not whether the agency will address every manner in which a party claims that decision was erroneous.") (quoting *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017)).

As explained above, upon completing its reconsideration, BOEM likely will take a new agency action on the COP. Any new action would affect Plaintiffs' NEPA and NHPA claims here because the present COP approval is both the major federal action relevant to Plaintiffs' NEPA claims, and the federal undertaking for purposes of their NHPA claims. Viewed through the lens of the APA, BOEM will potentially take a new agency action that could supplant the final agency action that is challenged here. And in connection with any new agency action, BOEM will likely

also need to consider the sufficiency of its environmental review, including under NEPA and the NHPA. Thus, continuing to litigate the merits of Plaintiffs' current claims would waste the Court's and the parties' resources. Under these circumstances, granting a remand while BOEM conducts its reanalysis and considers whether to issue a new COP decision is warranted. *Cf. Citizens Against the Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 418 (6th Cir. 2004) (reversing district court's denial of voluntary remand to conduct additional NEPA analysis).

   C.   Remand would not unduly prejudice Plaintiffs or Defendant-Intervenor.

   Finally, Plaintiffs and Defendant-Intervenor would not be prejudiced by the remand. Federal Defendants have not yet answered the Complaint, and no case management schedule has been set.[8] Nor is there any prejudice from delaying a decision on the merits, as no such decision is imminent. And even if it were, "delay of potentially unnecessary litigation is not the sort of undue prejudice that defeats a request for voluntary remand." *Friends of Animals v. Williams*, 628 F. Supp. 3d 71, 78 (D.D.C. 2022).

   Plaintiffs do not oppose remand, so it is clear that Plaintiffs will suffer no prejudice. Indeed, as explained above, because BOEM will likely need to consider the sufficiency of its environmental review under NEPA and the NHPA—the statutes that form the basis for Plaintiffs' claims here—there is a possibility that remand will address some, if not all, of Plaintiffs' concerns.

   Nor will SouthCoast Wind be unduly prejudiced because project construction is neither active nor imminent. The project lacks several necessary federal approvals. Giacona Decl. ¶ 19. And SouthCoast Wind's COP did not propose to start construction in the OCS until 2027. *Id.* Thus, because there would be no imminent construction delay, remand and re-evaluation, standing alone, would not prejudice SouthCoast Wind.

---

[8] *See supra* n.7.

To be sure, SouthCoast Wind may have concerns with the possibility that BOEM makes a decision different from its prior COP approval, but those concerns are speculative and unripe. "Ongoing agency review renders an agency order non-final and judicial review premature." *Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012). If SouthCoast Wind is dissatisfied with the results of BOEM's reanalysis—and assuming other jurisprudential requirements are met—the company can challenge BOEM's new decision at that time. BOEM's request for voluntary remand should be granted.

## II.    The Court should stay the case.

The Court should also stay this litigation pending BOEM's completion of its reconsideration. A stay would avoid wasting judicial and party resources, as BOEM's reconsideration of its COP approval may also directly impact—if not outright moot—Plaintiffs' NEPA and NHPA claims, as those claims are necessarily tethered to the agency action BOEM is now reconsidering.

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In determining whether to grant a stay, courts in this District consider "(1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay—that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the court's resources." *Ctr. for Biological Diversity v. Raimondo*, Civ. A. No. 18-112 (JEB), 2023 WL 7385563, at *1 (D.D.C. June 5, 2023).

Each factor weighs in favor of a stay here. Taking them in reverse order, as explained above, a stay is particularly warranted because it would conserve party and judicial resources. Just three days after BOEM issued the COP approval, the President directed Interior to review its existing wind energy leases. Giacona Decl. ¶ 9 (citing Presidential Wind Memo, 90 Fed. Reg. at

10

8363). Interior is undertaking that review and has determined that it should revisit its COP approval for the SouthCoast Wind Project. *Id.* ¶¶ 13-14. That review will likely lead to a new agency action (to approve, disapprove, or approve with conditions the SouthCoast Wind COP). *Id.* ¶ 15. In preparation for any new action, BOEM will likely need to assess the sufficiency of its NEPA and NHPA review to date—potentially affecting or even mooting Plaintiffs' claims. That is reason enough to enter a stay here. *See Ctr. for Biological Diversity*, 2023 WL 7385563, at *1 (judicial economy factor "dispositive").

Indeed, the D.C. Circuit has observed that a stay is appropriate "when there are legitimate developments that could obviate the need for judicial review, such as when a new administration chooses to reevaluate its litigating position or when an agency plans to reconsider a challenged rule." *Utah v. EPA*, No. 23-1157, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025) (per curiam); *see id.* ("It is a cardinal virtue of Article III courts to avoid unnecessary decisions and to promote voluntary resolutions where appropriate. Allowing resolution of a dispute without the court's intervention conserves judicial resources and comports with our theoretical role as the governmental branch of last resort.") (cleaned up); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. 13-cv-00059-MCE, 2013 WL 4094777, at *9 (E.D. Cal. Aug. 13, 2013) (granting stay because "the outcome of the [agency's] proceedings will impact the final resolution of this case" and, "without a stay, the parties will be required to litigate, and the [c]ourt to adjudicate, the same fundamental issues that are already being reconsidered[.]") (cleaned up); *Nat. Res. Def. Council v. Kempthorne*, No. 05-CV-01207 LJO-GSA, 2015 WL 3750305, at *8 (E.D. Cal. June 15, 2015) (efficiencies of stay "obvious" where, "[d]epending on the outcome of the [agency's action on remand], the Court's intervention may not be needed" and "[e]ven if further judicial intervention is sought, the Court and the parties would benefit from an updated record that may address some

11

of the numerous issues raised in this case"). Thus, a stay of this litigation to allow Interior to complete its reconsideration is the most efficient way to proceed.

*Second*, a stay of the litigation pending BOEM's reconsideration would avoid significant prejudice to Federal Defendants. Absent a stay, Federal Defendants would be forced to expend limited agency resources on litigating the merits of claims focused on the sufficiency of environmental review considering the anticipated impacts from approval of a COP that is now being reconsidered. *See, e.g.*, *S. Yuba*, 2:13–cv–00042–MCE; 2013 WL 4094777, at *9 ("Forcing [the government] to proceed in the instant litigation, when it is already clear that the outcome of the administrative proceedings will impact the final resolution of this case, would be prejudicial.") (cleaned up); *Nat. Res. Def. Council*, 2015 WL 3750305, at *8 (granting a stay, in part, because "federal agencies would be required to dedicate staff time and resources to litigating the merits of [p]laintiffs' claims, [when] those resources could be re-directed to other efforts"); *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (noting that litigation "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government").

*Finally*, a stay would not harm Plaintiffs or SouthCoast Wind. The outcome of BOEM's reconsideration may obviate or narrow the need for litigation, thus conserving party resources. BOEM's decision on reconsideration could ultimately impact the NEPA and NHPA review that prompted this suit, thus providing Plaintiffs with part of their requested relief. And because South-Coast Wind cannot otherwise begin construction imminently, it would not suffer undue prejudice.

Because each of the factors favors a stay, this Court should stay the litigation until BOEM completes its reconsideration.

## <u>CONCLUSION</u>

For these reasons, the Court should grant Federal Defendants' motion for voluntary remand of BOEM's COP approval, and it should stay the litigation until BOEM completes its reconsideration.

Respectfully submitted this 18th day of September, 2025.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

*/s/ Angela N. Ellis*
ANGELA N. ELLIS
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
(202) 598-7942
angela.ellis@usdoj.gov

*Counsel for Federal Defendants*

13