IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOWN AND COUNTY OF NANTUCKET,<br><br>    *Plaintiff,*<br>v.<br><br>DOUG BURGUM, et al.<br><br>    *Federal Defendants,*<br><br>and<br><br>SOUTHCOAST WIND ENERGY LLC<br><br>    *Defendant-Intervenor.* | Case No.: 1:25-cv-00906-TSC |

## DECLARATION OF MATTHEW GIACONA

I, Matt Giacona, declare

1. I am the Principal Deputy Director of the Bureau of Ocean Energy Management (BOEM) within the Department of the Interior (DOI). I have served as Principal Deputy Director since May 18, 2025. Prior to my current role, I served as Senior Advisor to the Secretary from March 24, 2025, to May 17, 2025.

2. As part of my responsibilities as the Principal Deputy Director of BOEM, I oversee BOEM's implementation of the Administration's policies and serve as a liaison between BOEM staff and DOI leadership. I have reviewed the Construction and Operations Plans (COP) for offshore wind projects that have been considered and/or are under consideration by BOEM. Even if BOEM has previously approved a COP, the agency has a continuing obligation to ensure that the project meets statutory requirements, and I have instructed the agency accordingly.

1

3. On behalf of the Department, in my role as acting Principal Deputy Director of BOEM, I have reviewed the documents described below.

4. SouthCoast Wind Energy LLC (SouthCoast) was awarded a lease under the Outer Continental Shelf Lands Act on December 13, 2018.

5. The lease did not authorize the lessee to perform any activity, unless SouthCoast submitted a construction and operation plan and BOEM subsequently approved it. *See* Commercial Lease of Submerged Lands for Renewable Energy Development on the Outer Continental Shelf, § 2 (2025)[1] and 30 C.F.R. § 585.200.

6. On December 20, 2024, the Principal Deputy Assistant Secretary for Land and Minerals Management signed a Record of Decision (ROD) for the SouthCoast Wind Project Construction and Operations Plan (COP) (dated November 1, 2024). A true and correct copy of the ROD is attached as **Exhibit A**. The ROD announced the Department's decision to approve the COP with modifications. The ROD stated:

> The Secretary's actions must comply with OCSLA Subsection 8(p)(4) (43 U.S.C. § 1337(p)(4)), which "imposes a general duty on the Secretary to act in a manner providing for the subsection's [various] goals." According to M-Opinion 37067, "[t]he subsection does not require the Secretary to ensure that the goals are achieved to a particular degree, and she retains wide discretion to determine the appropriate balance between two or more goals that conflict or are otherwise in tension."

ROD at p. 7, *quoting* M-Opinion 37067 at p. 5.

7. Appendix B of the ROD is an Information Memorandum from the Chief of the Office of Renewable Energy Programs in BOEM to the Director of BOEM, with the subject, "Compliance Review of the Construction and Operations Plan for the SouthCoast Wind Project for Commercial Lease OCS-A 0521" (the "OCSLA Memo"). The OCSLA memo

---

[1] Available at https://www.data.boem.gov/PDFDocs/Scan/RENLEASES/1/1935.pdf.

states: "BOEM has determined that the Project will comply with the Bureau's regulations and that the proposed activities will be carried out in a manner that provides for safety, protection of the environment, prevention of waste, and the other factors listed in subsection 8(p)(4) of OCSLA." ROD App'x B, OCSLA Compliance Review of the COP for the SouthCoast Wind Project, at p. 2.

8. On January 17, 2025, BOEM issued letters[2] to the CEO of SouthCoast, which is the holder of lease OCS-A 0521, informing him that the COP for SouthCoast Wind was approved and transmitting conditions of COP approval.

9. On January 20, 2025, President Trump issued a Presidential Memorandum entitled, *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* (Presidential Wind Memo). Section 1 of the Presidential Wind Memo directs the Secretary of the Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases, identifying any legal bases for such removal, and submit a report with recommendations to the President." A true and correct copy of the Presidential Wind Memo is attached as **Exhibit B**.

10. Separate from the lease review under Section 1, Section 2(a) of the Presidential Wind Memo directs the Secretary, along with the heads of other relevant agencies, to refrain from issuing new or renewed approvals for onshore or offshore wind projects "pending

---

[2] The SouthCoast Wind Project will be developed in two parts: Project 1 refers to the development in the northern portion of the Lease Area and associated interconnection, and Project 2 refers to the development in the southern portion of the Lease Area and associated interconnection. BOEM sent a letter for each Project informing SouthCoast of the COP approval.

the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices."

11. Secretary of the Interior Order 3437 was issued on July 29, 2025. Section 5(c) of that order directs the Department of the Interior's Solicitor's Office to consider whether remand is appropriate in any cases challenging Department approvals associated with wind projects. A true and correct copy of Secretary of the Interior Order 3437 is attached as **Exhibit C**.

12. In a May 1, 2025 opinion, M-37086,[3] the Acting Solicitor for the Department concluded that Solicitor's Opinion M-37067,[4] issued in 2021, does not, in the Department's view, reflect a permissible interpretation of OCSLA § 8(p)(4) and withdrew M-37067. A true and correct copy of M-37086 and M-37067 are attached as **Exhibit D** and **Exhibit E**, respectively. The effect of withdrawing M-37067 was to reinstate the 2020 Solicitor's Opinion, M-37059,[5] that interpreted section 8(p)(4). According to M-37086, section 8(p) "counsels a Secretary to err on the side of ensuring less interference with reasonable uses." Further, M-37086 directed bureaus and offices within the Department, including BOEM, to re-evaluate any action taken in reliance on M-37067. One of the actions that

---

[3] The full title of M-37086 is "Withdrawal of Solicitor's Opinion M-37067 and Reinstatement of M-Opinion 37059, *Secretary's Duty to Prevent Interference with Reasonable Uses of Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p)*, Alternate Energy-related Uses on the Outer Continental Shelf," May 1, 2025, Exhibit D.

[4] The full title of M-37067 is "Secretary's Duties under Subsection 8(p)(4) of the Outer Continental Shelf Lands Act When Authorizing Activities on the Outer Continental Shelf," April 9, 2021, Exhibit E.

[5] The full title of M-37509 is "Secretary's Duty to Prevent Interference with Reasonable Uses of the Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p), *Alternate Energy-related Uses on the Outer Continental Shelf*," December 14, 2020.

was taken in accordance with M-37067 was a change to 30 C.F.R. § 585.102(a). Prior to 2024, that regulation's language was consistent with section 8(p)(4) of OCSLA. However, in 2024, BOEM promulgated a final rule to amend the language to be consistent with the now-withdrawn M-37067. BOEM is currently beginning preparations for a rulemaking that will amend that provision of the regulations consistent with M-37086.

13. With respect to the SouthCoast Wind COP approval, the Department is in the process of undertaking the review called for in Section 1 of the Presidential Wind Memo and re-evaluating the decision to approve the COP as called for in M-37086. Based in part on the ROD's express reliance on the now withdrawn M-37067, I believe that the decision to approve the COP may not have fully complied with each of the factors in § 8(p)(4) of OCSLA.

14. The OCSLA Memo's explanation of the purported compliance with the individual factors in § 8(p)(4) may have failed to account for all the impacts that the SouthCoast Wind Project may cause. Other record documents, such as the Environmental Impact Statement, may have also understated or obfuscated impacts that could have subsequently been improperly weighed in making the determinations in the OCSLA Memo. As a result, BOEM's approval of the COP may not have been properly informed by a complete understanding of the impacts from the project and, therefore, may not have adequately ensured that all activities in the COP will be carried out in a manner that provides for, e.g., protection of the environment, prevention of interference with other reasonable uses of the OCS, and coordination with relevant Federal agencies.

15. The Department is undertaking a rereview of the COP, and upon completion of any required technical and environmental reviews, BOEM intends to reach a new decision on the COP: to either approve, disapprove, or approve with conditions. Since BOEM will be making a new agency action, BOEM will also need to consider the sufficiency of its existing environmental review, including the reviews under the National Environmental Policy Act, National Historic Preservation Act, and Endangered Species Act.

16. As BOEM continues its Section 1 review of the SouthCoast lease, other issues may be identified that BOEM may also consider and address during any remand.

17. The timing of BOEM's considerations of the COP during any remand could be affected by the outcome of the Department's efforts to complete the comprehensive assessment directed in section 2(a) of the Presidential Wind Memo, including review of the leasing and COP-review process that BOEM used for this project. Section 2(a) of the Presidential Wind Memo does not prevent Interior from working towards a new COP decision. The Department generally continues to review, analyze, and process wind energy submissions and materials consistent with the Presidential Wind Memo and applicable law. The outcome of the comprehensive assessment will inform the Department's decision-making on remand, and the time that may be necessary to complete the remand.

18. As indicated in M-37086, the Department is also considering revisiting the changes that were made to its regulations, 30 C.F.R. part 585, that conformed those regulations to the now withdrawn M-37067,[6] and BOEM is planning to proceed with rulemaking based on this review. The Department is also continuing to complete the review described above

---

[6] See 89 Fed. Reg. 42,602, 42,643-44 (May 15, 2024).

that is called for in Section 1 of the Presidential Memorandum, and that review could result in identifying potential issues with SouthCoast's lease. The projected timeline for both of those efforts is currently uncertain, and their outcomes or the information developed during processes could inform BOEM's decision-making on remand as well. As a result, it is difficult to predict the time necessary to complete BOEM's review of the COP on remand.

19. I am aware that there are existing practical and legal impediments to starting construction on this project and that SouthCoast cannot, as a practical matter, begin construction on the OCS at this time. It is my understanding that the project is missing other federal approvals, including a National Pollutant Discharge Elimination System permit from the U.S. Environmental Protection Agency, Clean Water Act Section 10 and Section 404 permits from the U.S. Army Corps of Engineers, and an Incidental Take Authorization under the Marine Mammal Protection Act from the National Oceanic and Atmospheric Administration. Further, SouthCoast's construction schedule included in the COP indicates that there is no active construction planned on the OCS until 2027 at the earliest. A true and correct copy of the schedule included in the SouthCoast COP is attached as **Exhibit F**.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 18th day of September, 2025

Matthew Giacona
Principal Deputy Director
Bureau of Ocean Energy Management
Department of the Interior