# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TOWN AND COUNTY OF NANTUCKET,
MASSACHUSETTS,

       *Plaintiff,*

   v.

DOUGLAS BURGUM, Secretary of the Interior;
U.S. DEPARTMENT OF THE INTERIOR;
BUREAU OF OCEAN ENERGY MANAGEMENT,

       *Defendants,*

   and

SOUTHCOAST WIND ENERGY LLC,

       *Defendant-Intervenor.*

Case No.: 1:25-cv-00906-TSC

---

## DEFENDANT-INTERVENOR SOUTHCOAST WIND ENERGY LLC'S RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR VOLUNTARY REMAND AND STAY

HOLLAND & KNIGHT LLP

Rafe Petersen (Bar ID Number: 465542)
Alexandra E. Ward (Bar ID Number: 1687003)
800 17th Street NW, #1100
Washington, D.C. 20006
Rafe.Petersen@hklaw.com
Alexandra.ward@hklaw.com
T: (202) 419-2481
F: (202) 955-5564

*Counsel for Defendant-Intervenor*
*SouthCoast Wind Energy LLC*

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................4

   I    THE PROJECT'S MULTI-YEAR ADMINISTRATIVE REVIEW AND APPROVAL PROCESS ........4

   II   PROCEDURAL HISTORY OF LITIGATION ..........................................................7

ARGUMENT ............................................................................................................11

   I    FEDERAL DEFENDANTS' BASIS FOR REMAND—TO RECONSIDER THE COP IN LIGHT OF YET ANOTHER SOLICITOR'S OPINION INTERPRETING OCSLA SECTION 8(P)(4)— NECESSITATES THE COURT FIRST DECIDING THE STATUTORY QUESTION RAISED. ........11

      A.   Under Loper Bright, The Court Must Resolve Issues of Statutory Interpretation.....11

      B.   The Zerzan Opinion is Not the "Best Reading" of OCSLA .....................................13

   II   FEDERAL DEFENDANTS MOTION MUST BE DENIED BECAUSE THEY HAVE NOT MET THE STANDARD FOR VOLUNTARY REMAND. ..................................................15

      A.   Federal Defendants have failed to provide a "substantial and legitimate" justification for remand. ........................................................................................15

      B.   Any Further Delay in This Proceeding Would Significantly Prejudice SouthCoast Wind. ...................................................................................................21

      C.   Federal Defendants' Desire to Conserve Judicial Resources is Misplaced. .............26

      D.   The Substance of the COP is Not At Issue In This Case. .........................................27

   III   CONSTITUTIONAL PRINCIPLES DICTATE THE NEED FOR JUDICIAL INTERVENTION ........28

      A.   Remand to the Agency Will Only Further This Administration's Unchecked Overreach. ..............................................................................................................28

      B.   There is No Reasonable Basis to Stay the Proceedings. ...........................................30

      C.   Judicial Intervention is Necessary Even if Remand is Granted. ...............................30

CONCLUSION ..........................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Waterway Operators v. Wheeler*,
    427 F. Supp. 3d 95 (D.D.C. 2019) ...................................................................23

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988) ........................................................................................16

*Byrd v. Heckler*,
    576 F. Supp. 549 (D.D.C. 1983) ....................................................................16

*Chapman v. El Paso Natural Gas Co.*,
    204 F.2d 46 (D.C. Cir. 1953) .........................................................................16

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ........................................................................................12

*Citizens Against the Pellissippi Parkway Extension v. Mineta*,
    375 F.3d 412 (6th Cir. 2004) ..........................................................................22

*Civil Aeronautics Board v. Delta Air Lines, Inc.*,
    367 U.S. 316 (1961) ........................................................................................17

*Clinton v. Jones*,
    520 U.S. 681 (1997) ........................................................................................30

*Code v. McHugh*,
    139 F. Supp. 3d 465 (D.D.C. 2015) ...............................................................15

*Confederated Tribes v. United States*,
    177 Ct. Cl. 184 (1966) ....................................................................................22

*Coteau Props. Co. v. Dep't of Interior*,
    53 F.3d 1466 (8th Cir. 1995) ..........................................................................17

*Ethyl Corp. v. Browner*,
    989 F.2d 522 (D.C. Cir. 1993) .......................................................................26

*FBME Bank Ltd. v. Lew*,
    142 F. Supp. 3d 70 (D.D.C. 2015) .................................................................27

*Friends of Animals v. Williams*,
    628 F. Supp. 3d 71 (D.D.C. 2022) .................................................................21

*Landis v. North American Co.*,
    299 U.S. 248 (1936)................................................................................30

*Lewis v. Sec'y of Navy*,
    2014 WL 12787221 (D.D.C. 2014) ..........................................................20

*Loper Bright v. Raimondo*,
    603 U.S. 369 (2024)....................................................2, 4, 11, 12, 15

*Lutheran Church–Missouri Synod v. Fed. Communications Comm'n*,
    141 F.3d 344 (D.C. Cir. 1998).............................................................16, 20

*Mayor and City Council of Ocean City, Maryland v. U.S. Dep't of Interior, et al.*,
    Case No. 1:24-cv-03111-SAG (D. Md.)....................................................19

*Nat'l Treasury Employees Union v. Nixon*,
    492 F.2d 587 (D.C. Cir. 1974)................................................................29

*Revolution Wind, LLC v. Burgum*,
    25-cv-02999-RCL (D.D.C) ......................................................................20

*Save Long Beach Island, Inc. v. U.S. Dep't of Commerce, et al.*,
    Case No. 1:25-cv-02211-JMC (D.D.C.) ..................................................19

*Seafreeze Shoreside v. United States DOI*,
    2024 U.S. App. LEXIS 30741 (1st Cir. Dec. 5, 2024) ....................14, 15

*Seven County Infrastructure Coalition v. Eagle County*,
    605 U.S. ___, 145 S.Ct. 1497 (2025)......................................................27

*Sierra Club v. Van Antwerp*,
    560 F. Supp. 2d 21 (D.D.C. 2008) .....................................................16, 19

*SKF USA, Inc. v United States*,
    254 F.3d 1022 (Fed. Cir. 2001)............................................................12, 19

*Util. Solid Waste Activities Group v. EPA*,
    901 F.3d 414 (D.C. Cir. 2018)................................................................21

**Statutes**

42 U.S.C. § 4336a(g)(1)(a) ..............................................................................23

42 U.S.C. § 4370m...................................................................................6, 23

42 U.S.C. § 4370m-1(c)(1)(C)(ii) ....................................................................7

43 U.S.C. § 1337...........................................................................................18

43 U.S.C. § 1337(p)(4) ................................................................................9, 13, 17

43 U.S.C. § 1337(p)(4)(A)-(L) .................................................................................28

**Regulations**

30 C.F.R. § 585.102 ..................................................................................................14

**Federal Register**

Renewable Energy Modernization Rule, 89 Fed. Reg. 42602 (May 15, 2024)............................14

**Other Authorities**

AP, *In front of drowning nations, Trump calls climate change a 'con job.' Here are the facts and context* (September 24, 2025), *available at* https://apnews.com/article/trump-un-climate-change-renewable-energy-5c033a24ec523a56f8244d85f3672eda ..............................................................18

BOEM, *Construction & Operations Plan – SouthCoast Wind Farm* (Nov. 2024), *available at* https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-construction-and-operations-plan ...................................5

BOEM, *Cumulative Historic Resources Visual Effects Analysis - Mayflower Wind Project* (Jan. 2023), *available at* https://www.boem.gov/sites/default/files/documents/renewable-energy/stat...........................5

BOEM, *SouthCoast Wind*, *available at* https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-formerly-mayflower-wind (last accessed Sept. 30, 2025) ...............................................................4, 6, 22

CNBC, *Offshore wind has no future in the U.S. under Trump administration, Interior Secretary says* (Sept. 11, 2025), *available at* https://www.cnbc.com/2025/09/11/offshore-wind-renewables-energy-trump-burgum.html#:~:text=Offshore%20wind%20has%20no%20future%20as%20a%20source%20of%20electricity,Wednesday%20without%20naming%20the%20projects ..............................................................................1, 8

E&E News, *Offshore wind stalls as Trump's hostility deepens* (June 20, 2025), *available at* https://www.eenews.net/articles/offshore-wind-stalls-as-trumps-hostility-deepens/ ..............................................................................8

The Hill, *Trump: 'We're not going to approve windmills'* (Jun. 12, 2025), *available at* https://thehill.com/policy/energy-environment/5347794-trump-opposes-wind-energy/ ..............................................................................18

Letter to Secretary of Massachusetts Department of Public Utilities, from Keegan
    Werlin LLP, DPU Docket No. 23-42 (June 30, 2025), *available at*
    https://eeaonline.eea.state.ma.us/dpu/fileroom/#/dockets/docket/10981....................................3

Memorandum For The Secretary Of The Treasury, The Attorney General, The
    Secretary Of The Interior, The Secretary Of Agriculture, The Secretary Of
    Energy, The Administrator Of The Environmental Protection, "*Temporary
    Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind
    Leasing and Review of the Federal Government's Leasing and Permitting
    Practices for Wind Projects*" (January 20, 2025) .....................................................................1

NPR, *Thar He Blows: Trump Tussles With Scots Over Wind Turbines* (July 1,
    2013), *available at* https://www.npr.org/2013/07/01/196352470/thar-he-
    blows-trump-tussles-with-scots-over-wind-turbines ...............................................................29

Permitting Council, *FAST-41 Program*, *available at*
    https://www.permitting.gov/projects/title-41-fixing-americas-surface-
    transportation-act-fast-41 (last visited Sept. 20, 2025)...........................................................23

Permitting Council, *SouthCoast Wind Permitting Dashboard*, *available at*
    https://www.permits.performance.gov/permitting-project/fast-41-covered-
    projects/southcoast-wind-energy-llc-southcoast-wind (last accessed Sept. 30,
    2025) ....................................................................................................................................7, 24

Roll Call, *Remarks: Donald Trump Leads a Cabinet Meeting at the White House -
    August 26, 2025*, at 6:48 (Aug. 26, 2025),
    https://rollcall.com/factbase/trump/transcript/donald-trump-remarks-cabinet-
    meeting-white-house-august-26-2025/ ....................................................................................18

Southcoast Wind, *Project Description*, *available at*
    https://southcoastwind.com/project-description/ (last accessed Sept. 30, 2025)......................4

TruthSocial, @realDonaldTrump (Aug. 20, 2025, 9:51 am), *available at*
    https://truthsocial.com/@realDonaldTrump/posts/115061417084982814...............................8

U.S. DOI, *Trump Administration Delivers Historic Progress on Offshore Wind*,
    *available at* https://www.doi.gov/pressreleases/trump-administration-delivers-
    historic-progress-offshore-wind (last accessed Oct. 1, 2025)...................................................5

**Introduction**

"Under this administration, there is not a future for offshore wind . . ."[1] This statement, made by Department of the Interior Secretary Doug Burgum at a recent global energy conference, accurately sums up the political agenda of the Trump administration to dismantle the entire offshore wind industry. Federal Defendants' instant motion ("Motion") presents yet another example of the President's ongoing coordinated attack on this renewable energy industry, driven by his Inauguration Day charge to every federal agency overseeing offshore wind to explore any means necessary to withdraw prior approvals or otherwise halt offshore wind development.[2]

In furtherance of this agenda, Federal Defendants have asked the Court to indefinitely stay these proceedings and remand the valid and lawfully granted approval of the Construction and Operations Plan ("COP") issued for SouthCoast Wind Energy LLC's ("SouthCoast Wind") offshore wind project ("Project"), rather than having to publicly defend against the baseless allegations of the Complaint. Dkt. No. 21, at 5.[3] Yet, Federal Defendants' true intent behind their request is plain to see. Federal Defendants have no genuine legal basis to reconsider the COP; they seek only to use remand to withdraw the COP approval and eliminate the Project. This is evident through both the Trump administration's obvious disdain for offshore wind and the fact that Federal Defendants' Motion is a verbatim, copy-and-paste request to those made by Federal

---

[1] CNBC, *Offshore wind has no future in the U.S. under Trump administration, Interior Secretary says* (Sept. 11, 2025), *available at* https://www.cnbc.com/2025/09/11/offshore-wind-renewables-energy-trump-burgum.html#:~:text=Offshore%20wind%20has%20no%20future%20as%20a%20source%20of%20electricity,Wednesday%20without%20naming%20the%20projects.

[2] Memorandum For The Secretary Of The Treasury, The Attorney General, The Secretary Of The Interior, The Secretary Of Agriculture, The Secretary Of Energy, The Administrator Of The Environmental Protection, "*Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects*" (January 20, 2025) (the "Offshore Wind Memo").

[3] Citations are to the ECF page numbers.

Defendants in other ongoing litigation challenging offshore wind. This overt litigation tactic is made in bad faith without any legal authority or regard for the impact on SouthCoast Wind or the public at large.

Indeed, the purported basis of Federal Defendants' request for remand is to allow reconsideration of the COP under the Outer Continental Shelf Lands Act ("OCSLA") – a statute not even at issue in this litigation. Moreover, the proffered reason for the reconsideration under OCSLA is a newly issued Solicitor's Opinion that withdraws a prior interpretation of the same statutory requirements, in favor of one from before. Dkt. No. 21, at 8-9 (citing to the "Anderson Opinion", the "Jorjani Opinion", and the "Zerzan Opinion"). Ironically, Federal Defendants have struggled with properly interpreting OCSLA Section 8(p)(4). In their own words, "[q]uestions of statutory interpretation are notoriously fraught exercises subject to no small amount of conflicting methods and precedent." Dkt. No. 21-15, at 3. Given this admission, the Court should weigh in on Federal Defendants' interpretation of OCSLA and decide this key legal issue before even considering whether to grant the remand request. It would make little sense for the Federal Defendants to expend their limited resources "reviewing" the Project under a faulty legal construct when they admit it is the province of the Court to interpret the statute. Dkt. No. 21-15, at 3-4 (citing to *Loper Bright v. Raimondo,* 603 U.S. 369 (2024)).

While characterized as a response to "substantial and legitimate" concern about the challenged Project, Dkt. No. 21, at 10, Federal Defendants have failed to demonstrate any genuine or good-faith basis to support their remand request. Federal Defendants' rationale is a pretext being employed in several other parallel challenges to offshore wind projects whereby the Bureau of Ocean Energy Management ("BOEM") seeks to reconsider validly issued approvals based on a

strained interpretation of OCSLA with the goal of setting aside the approvals based on a newly contrived statutory interpretation.

Federal Defendants also make the implausible argument that their tactics would not result in undue prejudice to SouthCoast Wind. As mentioned in prior filings, Federal Defendants' legal tactics have deliberately cast a cloud over the Project. If the Court allows the reconsideration and the open-ended delay that Federal Defendants seek, it would result in immediate and significant consequences for the Project and SouthCoast Wind, as the Project's sponsor. In turn, Federal Defendants argue that the "project lacks several necessary federal approvals." Dkt. No. 21, at 13. Yet, in arguing that SouthCoast Wind would not be harmed by further delay, Federal Defendants casually fail to mention the fact that the pending permits have been unlawfully withheld by them. Further, it is a matter of public record, and the Federal Defendants are aware, that SouthCoast Wind has until December 31, 2025 to execute Power Purchase Agreement with the States of Massachusetts and Rhode Island, and a remand of any length would jeopardize that deadline.[4]

This proceeding presents a classic case in which the involvement of the Judicial Branch as an objective arbiter is necessary to protect the public from undue burdens imposed by another branch of government. If this Court remands this case back to the Federal Defendants for indefinite review, the effect, as has been made obvious by the statements and actions from the executive branch, will be illegal termination of this Project for political reasons.

For these reasons, SouthCoast Wind respectfully urges this Court to deny Federal Defendants' Motion and allow this proceeding to move forward. Further, to the extent the Court is persuaded that an OCSLA statutory interpretation issue exists with respect to the Project's COP

---

[4] *See* Informational Letter to Secretary of Massachusetts Department of Public Utilities, from Keegan Werlin LLP, DPU Docket No. 23-42 (June 30, 2025), *available at* https://eeaonline.eea.state.ma.us/dpu/fileroom/#/dockets/docket/10981.

approval, that issue should first be fully briefed and resolved by this Court under *Loper Bright* precedent, instead of remanding to the agency. Finally, SouthCoast Wind requests a hearing on this matter and a scheduling conference to determine the next steps in this litigation, to be held after Federal Defendants' October 9, 2025 deadline to file a Reply to this Opposition.

## Background

### I    The Project's Multi-Year Administrative Review and Approval Process

SouthCoast Wind has expended considerable time and money developing an offshore lease area – located over 30 miles south of Martha's Vineyard and 20 miles south of Nantucket – that has the potential to generate over 2,400 megawatts (MW) of low-cost clean energy and power over one million homes.[5]

SouthCoast Wind has invested significant resources in the extensive, multi-year planning and development process for the Project, including by developing voluminous technical and scientific submissions to federal, state, and local agencies and participating in extensive public review processes. *See* Declaration of Michael Brown in Support of SouthCoast Wind's Motion to Intervene ("Brown Decl."), Dkt. 6-2, at ¶ 6.[6] SouthCoast Wind's direct involvement with Defendant BOEM dates back to early 2018 when, on April 6, 2018, BOEM announced that it would be conducting a competitive lease sale for 388,569 acres of commercial leasing for wind power generation off the coast of Massachusetts. After an extensive public review process and qualification of bidders, a competitive lease auction was held in December 2018. *Id.* ¶ 13. Mayflower Wind Energy LLC (renamed SouthCoast Wind Energy LLC in 2023) won the lease

---

[5] *See* Southcoast Wind, *Project Description*, *available at* https://southcoastwind.com/project-description/ (last accessed Sept. 30, 2025).

[6] *See also* Project COP and FEIS available on BOEM's website. *See* BOEM, SouthCoast Wind, *available at* https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-formerly-mayflower-wind (last accessed Sept. 30, 2025).

for OCS- A 0521("Lease") when BOEM accepted its successful $135 million bid. *Id.*[7]  The lease auction was held under the first Trump Administration, which touted offshore wind as "a big part" of its "made in America energy strategy."[8]

Relying on the Lease BOEM issued, SouthCoast Wind undertook extensive field surveys to understand and characterize the environment and the Project site, including meteorological, bathymetric, geological, geotechnical, geophysical, biological, archaeological, hazard, and oceanographic surveys. *Id.* ¶ 15.  This also included an extensive assessment of historic properties, including a marine archaeological survey, a terrestrial archaeological survey, a Visual Impacts Analysis, a Historic Resources Visual Effects Analysis specific to the Project, and a Cumulative Historic Resources Visual Effects Analysis.[9]  *See* Brown Decl. ¶¶ 22, 27.

SouthCoast Wind prepared and submitted a detailed COP to BOEM in February 2021, which it updated as the development process progressed based on input from BOEM and other federal and state agency review. *Id.* ¶ 16. The final version of the COP is thousands of pages long, including appendices.[10]

---

[7]  *See* BOEM, *Renewable Energy Lease Number OCS-A-0521*, *available at* https://www.boem.gov/sites/default/files/renewable-energy-program/State-Activities/MA/Lease-OCS-A-0521.pdf (last accessed Oct. 2, 2025).

[8] *See* U.S. DOI, *Trump Administration Delivers Historic Progress on Offshore Wind*, *available at* https://www.doi.gov/pressreleases/trump-administration-delivers-historic-progress-offshore-wind (last accessed Oct. 1, 2025).

[9]*See* BOEM, *Cumulative Historic Resources Visual Effects Analysis  - Mayflower  Wind Project* (Jan. 2023)  *available at*  https://www.boem.gov/sites/default/files/documents/renewable-energy/stat_activities/Mayflower_CHRVEA_Public_Redacted_508.pdf (last accessed Oct. 2, 2025).

[10] *See*  BOEM, *Construction & Operations Plan – SouthCoast Wind Farm* (Nov. 2024), *available at*  https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-construction-and-operations-plan. (last accessed Oct. 2, 2025).  *See also* Exhibit F to Federal Defendants' Motion for Voluntary Remand and Stay which contains the Executive Summary to the Project COP, Dkt. No. 27-1.

On November 1, 2021, BOEM issued a Notice of Intent to prepare an Environmental Impact Statement ("EIS") under the National Environmental Policy Act ("NEPA") for its review of the COP. Brown Decl. ¶ 17. That Notice began a more than three-year period of environmental review by the federal government involving SouthCoast Wind, eleven federal agencies, three state cooperating agencies, and an extensive array of other stakeholders, ranging from the fishing industry to local communities (including Plaintiff), to Native American Tribal Nations and communities, and to historic preservation organizations. *Id.* BOEM's NEPA process included extensive consultations and public involvement. *Id.* ¶¶ 17-19. SouthCoast Wind attended all of the meetings and submitted comments on the draft EIS ("DEIS"). *Id.* BOEM published the final EIS ("FEIS") on November 15, 2024.[11] *Id.* ¶ 17.

On December 20, 2024, after an over three-year long review process, BOEM issued a Record of Decision ("ROD") documenting the decision to approve the COP. BOEM subsequently issued the COP approval on January 17, 2025.[12] Brown Decl. ¶ 20. Meanwhile, extensive additional time, effort, and financial resources were expended to secure other required permits and approvals for the Project. *Id.* ¶ 21. As part of its issuance of the ROD, BOEM conducted an OCSLA compliance review of the COP and drafted its findings of compliance with each of the 12 OCSLA factors as set forth in Appendix B to the ROD. Dkt. No 21-2, at 185-221.

Notably, this vital energy infrastructure Project is a covered project under FAST-41,[13] which means that it is entitled to a streamlined and predictable review and permitting process that

---

[11] The DEIS and FEIS are available under the "Environmental Review" tab of BOEM's website. BOEM, *SouthCoast Wind*, *available at* https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-formerly-mayflower-wind (last accessed Oct. 2, 2025).

[12] The BOEM ROD and the COP approval are available under the "Project Overview" and "Construction and Operations Plan" tabs of BOEM's website, respectively. *See id.*

[13] Title 41 of Fixing America's Surface Transportation (FAST) Act, codified at 42 U.S.C. § 4370m *et seq.* ("FAST-41").

includes mandatory agency coordination and binding deadlines. Indeed, under FAST-41, such a "covered project" should have received all approvals within two years after the establishment of the performance schedule. 42 U.S.C. § 4370m-1(c)(1)(C)(ii). The Project was approved as a "covered project" under FAST-41 on June 15, 2021.[14] The Project already holds a majority of it federal permits,[15] and SouthCoast Wind has worked diligently to obtain the remaining approvals. Yet, federal agencies have recently missed the deadlines on certain permits and are now using the Offshore Wind Memo as an excuse to avoid their FAST-41 responsibilities. In fact, the three remaining federal approvals required for the Project[16] were recently delayed by the agencies yet again, and the deadlines have been pushed to January 2026 (more than 2 and a half years after their FAST-41 deadlines).[17]

## II    Procedural History of Litigation

Plaintiff Town and County of Nantucket, Massachusetts ("Plaintiff") filed its Complaint in this matter on March 27, 2025. Dkt. No. 1. The Complaint challenges the FEIS issued on November 15, 2024, and the ROD issued on December 20, 2024 by Defendant BOEM for the Project. The Complaint alleges violations of the NEPA and the National Historic Preservation Act ("NHPA") (via the Administrative Procedure Act), largely related to the alleged visual impacts of the Project on historic resources.

---

[14] *See* Permitting Council, *SouthCoast Wind Permitting Dashboard*, *available at* https://www.permits.performance.gov/permitting-project/fast-41-covered-projects/southcoast-wind-energy-llc-southcoast-wind (last accessed Oct. 2, 2025) (noting the Project's posting date as June 15, 2021).

[15] *Id*.

[16] As shown on the Project's Permitting Dashboard, these three remaining approvals are: (1) the Marine Mammal Protection Act Incidental Take Authorization; (2) the Section 10 Rivers and Harbors Act and Section 404 Clean Water Act Permit; and (3) the Clean Water Act Section 402 Permit. *Id.*

[17] *Id.*

SouthCoast Wind promptly moved to intervene in this case in April 2025, citing its direct, substantial, and legally protectable interests in the challenged Project approvals, how the relief requested threatened to directly impair such interests, and Federal Defendants' inability to protect SouthCoast Wind's interests. Dkt. No. 6-1, at 7. This Court granted intervention and lodged SouthCoast Wind's Answer to the Complaint. Dkt. No. 16.

Conversely, since the filing of the Complaint, Federal Defendants have tactically and purposely delayed these proceedings and, more generally, the Project's outstanding permit approvals, to further the groundless, unsubstantiated anti-wind agenda of the Trump administration which commenced with the issuance of the Offshore Wind Memo.[18] Federal Defendants were initially served with the Complaint over six months ago, but, to date, have yet to file a responsive pleading. Instead, Federal Defendants first asked this Court for one 90-day extension until September 5, 2025, citing two completely unrelated June filing deadlines on other cases. Dkt. No. 11. Then, just days before the first extension was set to expire, Federal Defendants asked the Court for a second extension to defer their responsive pleading deadline until after the Court issues a decision on a forthcoming Motion for Remand (the instant Motion). Dkt. No. 17. Notably, the

---

[18] *See* Offshore Wind Memo; *see also* E&E News, *Offshore wind stalls as Trump's hostility deepens* (June 20, 2025) (noting the President's statements regarding offshore wind: "The windmills are killing our country by the way," "garbage," "horrible," "very expensive to paint"), *available at* https://www.eenews.net/articles/offshore-wind-stalls-as-trumps-hostility-deepens/ ; TruthSocial, @realDonaldTrump (Aug. 20, 2025, 9:51 am) ("Any State that has built and relied on WINDMILLS and SOLAR for power are seeing RECORD BREAKING INCREASES IN ELECTRICITY AND ENERGY COSTS. THE SCAM OF THE CENTURY! We will not approve wind or farmer destroying Solar. The days of stupidity are over in the USA!!! MAGA"), *available at* https://truthsocial.com/@realDonaldTrump/posts/115061417084982814 ; *see* CNBC, *Offshore wind has no future in the U.S. under Trump administration, Interior Secretary says* (Sept. 11, 2025), *available at* https://www.cnbc.com/2025/09/11/offshore-wind-renewables-energy-trump-burgum.html#:~:text=Offshore%20wind%20has%20no%20future%20as%20a%20source%20of%20electricity,Wednesday%20without%20naming%20the%20projects (last accessed Oct. 2, 2025).

Court did *not* grant Federal Defendants' request for deferral and, as such, Federal Defendants' responsive pleading remained due on September 5, 2025. Nonetheless, Federal Defendants willfully ignored this deadline and have yet to file any responsive pleading in this case.[19]

On September 18, 2025, Federal Defendants filed their Motion for Remand, seeking voluntary remand and stay of this case to purportedly "avoid potentially needless or wasteful litigation." Dtk. No. 21 at 5. Yet, Federal Defendants' view of judicial economy appears to be that it would be easiest if they unlawfully revoked the Project's approvals, without being required to abide by the law and the obligations they owe to SouthCoast Wind. Tellingly, Federal Defendants have not identified any issues with the underlying claims in this matter. Indeed, Federal Defendants claim that remand is necessary to reconsider whether the COP was approved in accordance with the statutory criteria set forth under Section 8(p)(4) of the OCSLA[20], Dkt. No. 21, at 10-11, despite the fact that neither the OCSLA review nor substance of the COP are at issue in this case,[21] and that Federal Defendants changed their interpretation of Section 8(p)(4) following the COP approval at the will of the President and the DOI Secretary.

Federal Defendants further claim that an indefinite stay should be granted until BOEM completes its reconsideration under OCSLA Section 8(p)(4) to avoid expense of party and judicial resources in litigating the merits of the COP approval being reconsidered, Dkt. No. 21, at 8-9. Federal Defendants make this argument despite the fact that Plaintiff challenges the NEPA and

---

[19] As discussed in SouthCoast Wind's Reply to Federal Defendants' Opposition to SouthCoast Wind Energy LLC's Motion to Compel the Administrative Record, Dkt. No. 23, SouthCoast Wind maintains that Federal Defendants have missed their responsive pleading deadline and remain in violation of the Local Rules.

[20] 43 U.S.C. § 1337(p)(4); s*ee also supra* at 7 (mentioning OCSLA compliance review set forth in Appendix B to the ROD).

[21] Given Federal Defendants' failure to meet its responsive pleading deadlines, and the immateriality of OCSLA issues, the Court might consider the extraordinary remedy of striking all or part of the Remand Motion and its Exhibits under Fed. R. Civ. P. 12(f).

NHPA impact reviews underlying the ROD, not the COP approval itself. As noted in prior pleadings, SouthCoast Wind stands ready to defend its entitlements under NEPA and the NHPA whether or not Federal Defendants want to expend the resources towards this effort. Such claims are ripe for review and should be addressed and litigated now, so that the Project can move forward without this litigation hanging over it.

Finally, Federal Defendants assert that SouthCoast Wind will not be unduly prejudiced by remand. Dkt. No. 21, at 9-10. This position overlooks the considerable harm intentionally caused to this Project by Federal Defendants and the fact that they seek to use the remand and reconsideration as pretext to manufacture a basis to set aside or indefinitely delay the COP approval. Moreover, their argument that there can be no prejudice because the case is in its infancy seeks to benefit from their own efforts to slow down the progress of this proceeding and delay the three remaining approvals for the Project.[22] Federal Defendants should not be permitted to argue that SouthCoast Wind will suffer no prejudice because construction is not imminent due to their own intentional, unlawful inaction.

---

[22] Federal Defendants' delay in issuing the remaining permits for the Project has occurred over SouthCoast Wind's written objections documented in numerous letters and emails to the National Marine Fisheries Service, United States Army Corps of Engineers, the Environmental Protection Agency, BOEM, and the Federal Permitting Improvement Steering Council expressing that such delays continue to harm SouthCoast Wind's ability to develop the Project and enjoy the lease. These letters will be part of the administrative record provided by the Federal Defendants which should be produced in this litigation. *See* Dkt. No. 20.

## Argument

**I      Federal Defendants' Basis for Remand – To Reconsider the COP in Light of Yet Another Solicitor's Opinion Interpreting OCSLA Section 8(p)(4) – Necessitates the Court First Deciding the Statutory Question Raised.**

At the heart of Federal Defendants' request for remand lies the Department of the Interior's vacillating interpretations of Section 8(p)(4) of OCSLA and its attempt to retroactively impose on SouthCoast Wind a different interpretation than the one under which BOEM approved the COP. However, the Supreme Court has made clear that statutory interpretation sits squarely in the realm of the courts to decide, not administrative agencies. *See Loper Bright,* 603 U.S. 369. Federal Defendants' changing interpretations of OCSLA demonstrate their inability to properly and definitively interpret the statutory provision now at center stage. By seeking remand to reconsider whether BOEM issued the COP approval in accordance with OCSLA's statutory criteria as set forth in competing Solicitor's Opinions – an issue **not** presented in Plaintiff's Complaint – Federal Defendants' Motion necessitates the need for this Court to first give proper interpretation of that statutory provision. Dkt. No. 21, at 10-13; Giacona Dec. at 4-5, Dkt. No. 21-1. Indeed, if the Court decides Federal Defendants' most recent interpretation of Subsection 8(p)(4) is incorrect, then there is no legitimate basis for seeking remand, and the Court must deny Federal Defendants' request.

   A.      Under *Loper Bright*, The Court Must Resolve Issues of Statutory Interpretation.

Following the Supreme Court's decision in *Loper Bright*, it is the Court's role to determine the "single, best meaning of a statute" without deferring to an agency's interpretation. *Loper Bright,* 603 U.S. at 400.[23] This is especially the case where the agency seeks voluntary remand to

---

[23] The Solicitor's memorandum cited by Federal Defendants oddly cites *Loper Bright* as "a guiding light to direct federal agencies as to how best to approach" this dilemma of statutory interpretation. "Withdrawal of Solicitor's Opinion M-37067 and Reinstatement of M-Opinion 37059, *Secretary's*

reconsider compliance with statutory criteria. *See SKF USA, Inc. v United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001) (where an agency's voluntary remand request is "associated with a change in agency policy or interpretation," and there is "an issue as to whether the agency is either compelled or forbidden by the governing statute to reach a [particular] result, a reviewing court . . . has considerable discretion. **It may decide the statutory question** or it may order a remand").[24] Thus, post-*Loper Bright,* it is the role of the Court to decide whether the agency's previous interpretation of the statute was proper, not the agency or the current Trump administration.

The fact that Federal Defendants' Solicitors (*i.e.* the Department's chief legal officer) have struggled with the correct interpretation of OCSLA provides a textbook example of the need for the courts to weigh in on the agency's statutory interpretation. Federal Defendants should not be permitted to seek a remand based on a newly-created, post-decisional, extra-record interpretation of the statute under which they (but not Plaintiff) seek to reconsider their action.[25] Rather, before ruling on the Motion for Remand, the Court should first decide which agency interpretation is correct as this may obviate the need for the remand. Importantly, this promotes Federal Defendants' purported commitment to judicial economy.

---

*Duty to Prevent Interference with Reasonable Uses of Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p)*, *Alternate Energy-related Uses on the Outer Continental Shelf*". Dkt. No 21-5 at 3.

[24] It is worth noting that *SKF USA* applied *Chevron* deference to support a remand decision, which was overturned by *Loper Bright* and is therefore inapplicable to the present case. There, the Court applied *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to find that the Department of Commerce had substantial discretion in deciding to change its policy based on statutory interpretation and therefore granting remand was appropriate. *SKF USA,* 254 F.3d at 1027. That methodology cannot be applied to the present case. *Loper Bright* makes clear that it is up to the Court to determine the best reading of the statute.

[25] Plaintiff's lack of comment on the Project's compliance with OCSLA during the NEPA process resulting in the ROD would preclude them from even bringing an OCSLA claim against SCW.

B.    The Zerzan Opinion is Not the "Best Reading" of OCSLA.

While SouthCoast Wind maintains that this case does not implicate OCSLA and respectfully encourages this Court not to be distracted by Federal Defendants' discussion of same, nothing in OCSLA indicates that Section 8(p)(4) operates in the way that Federal Defendants now claim it does. Section 8(p)(4) simply states that "[t]he Secretary shall ensure that any activity under this subsection is carried out in a manner that provides for" a number of factors such as safety and prevention of interference of reasonable uses of the exclusive economic zone. 43 U.S.C. § 1337(p)(4).[26] It does not specify that the Department can reconsider approvals that have already been issued and relied upon under these factors.[27] To permit such a strained reading of the statute weakens the entire OCSLA regulatory framework, upon which thousands of permittees (including those in other industries besides offshore wind) rely to conduct billions of dollars of business offshore. In fact, it charts a dangerous course that threatens the entire offshore energy industry, as it would open all permittees up to the whims of each subsequent administration.

Federal Defendants argue that remand is required to reconsider the COP's compliance with OCSLA Section 8(p)(4) as most recently interpreted by the M-Opinion issued by the Acting Solicitor of the Department of the Interior, Gregory Zerzan, in May 2025 ("Zerzan Opinion"). Dkt. No. 21, at 9. However, BOEM reviewed and approved the COP under the April 2021 Anderson Opinion (M-Opinion 37067) ("Anderson Opinion"), four months before the Zerzan Opinion was issued. Thus, notwithstanding the fact that this Opinion is not part of the relevant administrative record, *see* Section II(A) below, the statutory interpretation set forth in the Zerzan Opinion is not the best reading of OCSLA and should not be upheld by this Court.

---

[26] The Giacona Declaration suggests that they are interested in analyzing "prevention of interference with other reasonable uses of the OCS." Dkt. No. 21-1, at 5.

[27] While OCSLA does provide BOEM with the authority to suspend or cancel a lease, such action must be taken in accordance with Section 8(a) of OCSLA, not Section 8(p)(4).

The Zerzan Opinion relies on the First Circuit decision in *Seafreeze Shoreside v. United States DOI*, 2024 U.S. App. LEXIS 30741 (1st Cir. Dec. 5, 2024), to assert that the Anderson Opinion incorrectly permitted BOEM to balance the goals of Section 8(p)(4). Dkt. No. 21, Ex. D, at 3. However, the Zerzan Opinion is an incorrect reading of the *SeaFreeze* decision. In *SeaFreeze*, the First Circuit held only that the district court did not err in concluding that BOEM had reviewed all Section 8(p)(4) criteria and determined that all were met. *Seafreeze Shoreside*, 2024 U.S. App. LEXIS 30741, at *25-26. The Circuit went on to acknowledge the district court's finding that BOEM has "discretion" to "balance" the statutory factors when approving offshore wind projects. *Id.* Thus, contrary to the position taken in the Zerzan Opinion, *SeaFreeze* does not stand for the proposition that BOEM cannot utilize its discretion to "rationally balance" the twelve statutory criteria when reviewing and approving an offshore wind project. Accordingly, the Zerzan Opinion is not the "best reading" of the statute, is not consistent with federal case law, and its statutory interpretation should be rejected by this Court. Moreover, *Seafreeze* suggests the exact opposite conclusion reached in the Zerzan Opinion given that the Circuit there upheld an OCSLA Section 8(p)(4) review conducted under the Anderson Opinion..

Finally, the OCSLA compliance review conducted for the Project was thorough and in compliance with the Zerzan Opinion's directive to "ensure that each criterion is met." Specifically, as set forth in Appendix B of the ROD, BOEM conducted its review of the Project pursuant to BOEM regulations at 30 C.F.R. § 585.102, which codified the OCSLA compliance review standards covered in the Anderson Opinion, after a full notice-and-comment process.[28]

---

[28] *See* Renewable Energy Modernization Rule, 89 Fed. Reg. 42602 (May 15, 2024). Importantly, the Zerzan Opinion has not undergone notice-and-comment rulemaking. As such, the regulations in place when the SouthCoast Wind project was approved still stand. While Federal Defendants may claim that they are in the process of changing those regulations, new regulations also would not apply retroactively to approvals already issued.

Additionally, BOEM determined that its review was consistent with the *SeaFreeze Shoreside* decision.[29]

Thus, SouthCoast Wind urges this Court to apply the Supreme Court precedent in *Loper Bright* to conduct its own independent analysis of whether the agency's interpretation of OCSLA under the Zerzan Opinion is the "best reading" of the statute, with no deference afforded to the agency on that question. SouthCoast Wind is willing to brief this issue fully, should the Court request it. This should logically and necessarily take place prior to any remand to provide guidance to the agency, if the Court ultimately exercises its discretion to allow the requested remand.

## II    Federal Defendants Motion Must Be Denied Because They Have Not Met the Standard for Voluntary Remand.

In support of their Motion, Federal Defendants claim that: (1) there is a "substantial and legitimate" justification for remand; (2) remand would not unduly prejudice the other parties to the proceeding, including SouthCoast Wind; and (3) remand would conserve judicial and party resources. For the reasons discussed below, closer examination of each of these factors makes clear that Federal Defendants have not adequately demonstrated any of the foregoing criteria to support their request for remand.

### A.    Federal Defendants have failed to provide a "substantial and legitimate" justification for remand.

Federal Defendants argue that remand is warranted to allow BOEM to "reconsider its previous position" approving the COP. However, Federal Defendants have offered no "substantial and legitimate" justification for why remand or reconsideration would be appropriate in this case. *See Code v. McHugh*, 139 F. Supp. 3d 465, 469 (D.D.C. 2015) (court has discretion to grant

---

[29] In ROD Appendix B, footnote 2, BOEM wrote "The recent decision in *Seafreeze Shoreside v. United States DOI*, Nos. 23-1853, 23-2051, 2024 U.S. App. LEXIS 30741, at *43-48 (1st Cir. Dec. 5, 2024) is consistent with conclusions in this M-Opinion." Dkt. No. 21-2, at 186.

voluntary remand, "if the agency's concern is substantial and legitimate"); *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 23-34 (D.D.C. 2008) (same). In fact, it is clear that Federal Defendants seek remand simply to find a way to justify revoking the COP approval to fulfill the political goals of the Trump administration. Federal Defendants utilize this bad faith, lawfare tactic in several other proceedings, and it has no legitimacy. *Lutheran Church–Missouri Synod v. Fed. Communications Comm'n,* 141 F.3d 344, 349 (D.C. Cir. 1998) (requests for remand are made in "bad faith" when they amount to an attempt to continuously delay the pending litigation or a "legal tactic . . . to avoid judicial review")*; see also Byrd v. Heckler,* 576 F. Supp. 549, 550 (D.D.C. 1983) (denying remand where the government waited "until the eleventh hour . . . [to] further delay by moving for voluntary remand"); *see also Chapman v. El Paso Natural Gas Co.*, 204 F.2d 46, 53–54 (D.C. Cir. 1953) ("[A] decision may not be repudiated for the sole purpose of applying some quirk or change in administrative policy . . . .").[30] Indeed, retroactive application of a statutory interpretation issued subsequent to the issuance of COP approval is not provided for in OCSLA and is therefore not appropriate.[31]

Federal Defendants' substantive basis for remand is that, through BOEM's internal review of offshore wind leasing and permitting practices as directed by the post-decisional Offshore Wind Memo, the agency determined that the COP may not fully comply with the statutory criteria set

---

[30] Note that, while these cited cases set forth the standard for voluntary remand, their holdings can be distinguished from this proceeding, because none of these cases involve permits (which are a property interest), but rather involve other types of federal agency actions/decisions.

[31] "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms. Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant." *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208-09 (1988) (internal citations and quotations omitted).

forth in Section 8(p)(4) of OCSLA, as newly interpreted by the Zerzan Opinion, because the agency may have "failed to account" for all potential impacts of the Project. Dkt. No. 21, at 11. However, notwithstanding the bad faith nature of this request in light of the Trump administration's attack on offshore wind, Federal Defendants' justification for remand and reconsideration is flawed for numerous reasons.

Federal Defendants erroneously assume that reconsideration of the COP will *necessitate* reevaluation of the environmental and historic resources review for the Project under NEPA. Dkt. No. 21, at 15. Yet, Federal Defendants have made no attempts to explain why this assumption is reasonable, unless their plan is simply to reopen every aspect of the COP in hopes of finding some excuse to set it aside. For example, how could Federal Defendants be certain that these review processes will be impacted, and the litigation mooted, if they do not even know which statutory criteria under OCSLA Section 8(p)(4) – most of which have nothing to do with impacts to environmental resources and nothing to do with historic resources[32] – they will rely upon during reconsideration? They cannot, unless they have already predetermined the outcome of their reconsideration.

Agencies do not possess inherent authority to reconsider or modify their decisions in the absence of express statutory authority. In *Civil Aeronautics Board v. Delta Air Lines, Inc.*, 367 U.S. 316 (1961), the Supreme Court rejected the notion that agencies may expand their powers of reconsideration without a solid foundation in statutory or regulatory language. Absent the explicit statutory or regulatory authority to do so, Federal Defendants must demonstrate that the permitting decision was arbitrary, capricious, or an abuse of discretion. *See Coteau Props. Co. v. Dep't of*

---

[32] This case is ultimately about whether the potential impacts of the Project on the Island of Nantucket and its historic resources have been adequately assessed. Impacts on historic resources are not considered under OCSLA Section 8(p)(4). *See* 43 U.S.C. § 1337.

*Interior,* 53 F.3d 1466, 1469–70 (8th Cir. 1995) (requiring agency reconsideration of permitting decisions to be conducted under the deferential "arbitrary, capricious, or abuse of discretion" standard, and finding agency reversal based solely on changing policies to be improper). They have not done so.

Federal Defendants cannot overcome the breadth of evidence demonstrating that this Motion, which not only ignores procedural rules in an attempt to fast track the Court to a preferred outcome, is merely a guise to avoid judicial review entirely and return jurisdiction over the Project back to the Trump administration which has made clear its intention of dismantling the entire offshore wind industry – regardless of the billions of dollars invested (in the leases, project development, permitting etc.), the nature of the review, or the impact on the public at large. The Offshore Wind Memo is vague and has no legal rationale other than the preconception that all offshore wind projects have "alleged legal deficiencies" and "potential inadequacies." It is obvious that the decision to eliminate the offshore wind industry was made by the President and now the Federal Defendants are looking to manufacture a way to paper it.[33] The President is literally obsessed with his personal hatred of wind power.[34] The fact that the President is personally

---

[33] It is also important to note that there was no administrative record supporting the Offshore Wind Memo. Thus, the federal agencies are merely doing what the President has asked them to do, with no legal justification or support. Note that the validity of the Offshore Wind Memo itself has been challenged in a separate litigation which is awaiting a ruling on motions for summary judgment (*State of New York et al., v Donald J. Trump*, Case No. 1:25-cv-11221 (D. MA 2025)).

[34] *See e.g.,* The Hill, *Trump: 'We're not going to approve windmills'* (June 12, 2025), *available at* https://thehill.com/policy/energy-environment/5347794-trump-opposes-wind-energy/ ("You go and look at these beautiful plains and valleys, and they're loaded up with this garbage that gets worse and worse looking with time"); *see also* Roll Call, *Remarks: Donald Trump Leads a Cabinet Meeting at the White House – August 26, 2025*, at 6:48 (Aug. 26, 2025) https://rollcall.com/factbase/trump/transcript/donald-trump-remarks-cabinet-meeting-white-house-august-26-2025/ (noting "windmills" are "ugly"); AP, *In front of drowning nations, Trump calls climate change a 'con job.'* (Sept. 24, 2025), *available at* https://apnews.com/article/trump-un-climate-change-renewable-energy-5c033a24ec523a56f8244d85f3672eda (Trump called

affronted by wind power hardly meets the case law precedent requiring Federal Defendants provide a good-faith and legitimate reason for remand, regardless of whether the rationale is presented in a tidied up post-decisional memorandum or executive order. *See e.g., SKF USA, Inc.*, 254 F.3d at 1029; *Sierra Club*, 560 F. Supp. 2d at 23-34.

Furthermore, any perception of legitimacy (of which there is none) is undermined by the fact that this request is not unique to this case. Rather, this Motion serves as a tactic in a broader litigation scheme employed by the Trump administration in multiple other proceedings that seek to derail the lawfully granted approvals for existing projects, without regard to procedural or substantive law.[35] In fact, Federal Defendants were recently enjoined from an attempt to use OCSLA to halt the Revolution Wind offshore project, which was 80% constructed at the time. *Revolution Wind, LLC v. Burgum*, Case No. 25-cv-02999-RCL (D.D.C. Sept. 22, 2025) (Revolution Wind is entitled to a stay of Federal Defendant's August 22, 2025 Order seeking to "halt all ongoing activities related to the Revolution Wind Project on the Outer Continental Shelf" until BOEM completed its planned review). Thus, BOEM's contention that it objectively desires to reconsider the COP approval to ensure it has fulfilled its duties under OCSLA cannot be squared as an intention to "genuinely" and "legitimately" reconsider its prior decision. Nor can it be

---

renewable sources of energy like wind power a "joke" and "pathetic," falsely claiming they don't work, are too expensive and too weak) (last accessed Oct. 2, 2025).

[35] Indeed, in some places, Federal Defendants' Motion for Remand is near verbatim to motions for remand filed in other offshore wind cases. *See* Federal Defendants' Motion and Memorandum in Support of Voluntary Remand with Vacatur and to Dismiss, *Mayor and City Council of Ocean City, Maryland v. U.S. Dep't of Interior, et al.*, Case No. 1:24-cv-03111-SAG (D. Md. Sept. 12, 2025); *see also* Federal Defendants' Motion and Memorandum in Support of Voluntary Remand and Stay, *Save Long Beach Island, Inc. v. U.S. Dep't of Commerce, et al.*, Case No. 1:25-cv-02211-JMC (Sept. 26, 2025).

squared with this administration's own policies seeking to "expedite permitting approvals" consistent with the Fiscal Responsibility Act of 2023 (Public Law 118-5).[36]

The request for remand is an improper, intentional delay tactic, fueled by a political agenda, to tie up the Project so that the agency may manufacture an administrative record and additional legal interpretations to support reversal of the COP approval in the reconsideration process, while delaying this proceeding, and preventing a decision on the merits. *See Lutheran Church–Missouri Synod,* 141 F.3d at 349; *see also Lewis v. Sec'y of Navy*, 2014 WL 12787221, *4 (D.D.C. 2014) (denying remand where the request "appear[ed] to be motivated solely by a desire to avoid judicial review"). Federal Defendants' hope that the Project will die on the vine if they can delay it for long enough should not be condoned.

Federal Defendants' intent to evade judicial review is further evidenced by their willful and deliberate failure to engage in these proceedings by ignoring deadlines set by this Court. Federal Defendants were given several months to develop a litigation strategy and file a responsive pleading in this case. However, they have continuously delayed meaningfully engaging in this case, only to file this Motion almost six months after being served with the Complaint. Even if Federal Defendants had a "substantial and legitimate" desire to reconsider the ROD that was issued by BOEM in December of last year, in light of the post-decisional Offshore Wind Memo that was issued in January, they could have sought remand earlier.[37] The timing of this Motion makes it even clearer (particularly when coupled with Federal Defendants' pattern of delay in this proceeding), that Federal Defendants' stated justification for remand is either an illegitimate delay

---

[36] *See* Council on Environmental Quality Memorandum on Implementation of NEPA (Feb. 19, 2025) ("Agencies must prioritize efficiency and certainty over any other policy objectives that could add delays and ambiguity to the permitting process. Accordingly, CEQ is issuing this guidance to assist agencies with the implementation of NEPA and E.O. 14154.").

[37] The Zerzan Opinion was issued on May 1, 2025. Dkt. 21-5, at 2.

tactic, at best, or at worst an attempt to replace judicial review and adjudication of agency decisions with executive fiat. To now remand the case after this demonstrated intent of unreasonable delay would only reward Federal Defendants' willfully unlawful behavior.

B.    Any Further Delay in This Proceeding Would Significantly Prejudice SouthCoast Wind.

Federal Defendants claim that a stay of the litigation would avoid prejudice to their interests because absent a stay "Federal Defendants would be forced to expend limited agency resources on litigating the merits of claims focused on the sufficiency of environmental review considering the anticipated impacts from approval of a COP that is now being reconsidered." Dkt. No. 21, at 16. Again, however, the substance of the COP under OCSLA review is not being challenged by Plaintiff. Moreover, allowing remand for the COP approval to undergo a new OCSLA review, assuming *arguendo* such review was even permissible, or genuine and legitimate, would result in unnecessary expenditure of the limited agency resources they profess an interest in conserving.

On the other hand, Federal Defendants' Motion must be denied because it would cause "undue prejudice" to SouthCoast Wind as the Project proponent that has expended seven years and hundreds of millions of dollars in developing the Project and working with BOEM and other involved agencies to subject the Project to thorough, legally defensible review and expert agency evaluation.[38] *See Util. Solid Waste Activities Group v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018) (denying remand on certain claims where it would "prejudice the [non-movant's] vindication of their own claim"); *Friends of Animals v. Williams*, 628 F. Supp. 3d 71, 76 (D.D.C. 2022) (a court

---

[38] BOEM's webpage for the SouthCoast Wind Project contains copies of the EIS, plans, approvals, and other documents and information demonstrating the detailed and thorough review process that the Project has been subject to for several years. BOEM, *SouthCoast Wind*, *available at* https://www.boem.gov/renewable-energy/state-activities/southcoast-wind-formerly-mayflower-wind (last accessed Oct. 2, 2025).

must consider "whether remand would unduly prejudice the non-moving party"). SouthCoast Wind has invested significant resources in the extensive, multi-year planning and development process for the Project, including by developing voluminous technical and scientific submissions to federal, state, and local agencies and participating in a valid and legally defensible public review processes. *See* Brown Decl. at ¶ 12.

Courts have stated frequently that reliance by parties on an initial agency decision is a factor weighing against an inherent power to reconsider. *See Confederated Tribes v. United States*, 177 Ct. Cl. 184, 191 (1966) (warning that an inherent power to reconsider "is especially dangerous if there has been reliance on the assumed finality of the decision"); *see also Citizens Against the Pellissippi Parkway Extension v. Mineta*, 375 F.3d 412, 418 (6th Cir. 2004) (suggesting that detrimental reliance might justify a district court decision refusing to grant a voluntary remand to an agency where the agency would otherwise have the inherent power to reconsider).

To date, SouthCoast Wind has incurred financial obligations and commercial commitments in excess of $600 million in developing, permitting, engineering, and preparing for and commencing construction of the Project. *Id.* at 11. Further delay in this matter and the specter of the remand implicates various contracts and commitments made in reliance on the lawful issuance of Project approvals, project financing, and recent Congressional action to set firm deadlines on environmental reviews. 42 U.S.C. § 4336a(g)(1)(a). Given the Project's FAST-41 designation, SouthCoast Wind has taken significant steps in reasonable reliance on its issued permits and permitting schedule for its remaining permits, and will suffer additional grave economic,

operational, and reputational harm if the Project is not able to move forward according to schedule.[39]

If Federal Defendants are granted the relief they seek – *i.e.,* an indefinite remand – and the Project is necessarily put on pause, both the Project and SouthCoast Wind will continue to face actual harm. Specifically, SouthCoast Wind's ongoing obligations all incurred solely due to the delay created by the Offshore Wind Memo is in excess of seventy million dollars per year. In addition, SouthCoast Wind will be faced with suspending and renegotiating contracts with third-party vendors and partners, and missing critical Project deadlines that it and its investors have relied upon. This level of harm clearly rises to the type of "undue prejudice" that makes remand inappropriate in this case. *See American Waterway Operators v. Wheeler*, 427 F. Supp. 3d 95, 99 (D.D.C. 2019) (denying remand where it would "unduly prejudice" Environmental Intervenors that took action in reliance on a prior EPA determination that would be placed "in limbo" during remand).

Yet, despite the obvious and imminent harm that SouthCoast Wind will face if remand is granted, Federal Defendants simply dismiss the undue prejudice on SouthCoast Wind by pointing to the few federal approvals that other federal agencies have illegally delayed issuing to

---

[39] In addition to the undue prejudice upon SouthCoast Wind, further delay of this proceeding will also harm the public. The Project would supply energy and jobs to Massachusetts and Rhode Island. Overall, the Project is expected to create more than 5,000 full-time equivalent job-years (direct, indirect, and induced effects of the Project) during Project construction, and an estimated 21,000 full-time equivalent job-years for the Project's operations and maintenance work. Brown Decl. ¶ 3. As a FAST-41 project under the Fixing America's Surface Transportation Act (42 U.S.C. § 4370m *et seq.*), the Project should have created jobs sooner than it ordinarily would have due to the expedited approvals process that FAST-41 is intended for. *See* Permitting Council, *FAST-41 Program, available at* https://www.permitting.gov/projects/title-41-fixing-americas-surface-transportation-act-fast-41 (last accessed Oct. 2, 2025). This continual, unreasonable delay only harms and delays this job creation and investment in this country. No company would invest in this nation if the permits it receives are only good for so long as the administration that issued them remains in office.

SouthCoast Wind under the Trump administration, claiming that, without such approvals, there will be no imminent construction delay. Dkt. No. 21, at 13. This position is improper and flawed for two main reasons.

First, Federal Defendants rely on their own unreasonable delay in issuing final approvals for the Project as the basis for their argument that SouthCoast Wind will not be prejudiced by remand. SouthCoast Wind has worked diligently since the first Trump administration sold SouthCoast Wind its lease in 2018 to receive all but three of its numerous federal permits and approvals for this Project as demonstrated in the Project's FAST-41 Permitting Dashboard.[40] The issuance of these final three approvals, each of which has been nearly complete for months, has been materially and unreasonably delayed by this current Trump administration without substantive justification, and in direct violation of their own policy placing a *mandatory* duty on all federal agencies to "prioritize efficiency and certainty over any other policy objectives that could add delays and ambiguities to the permitting process."[41] In fact, the remaining permits have been under review since 2022, and were scheduled to be issued in February and March of this year, yet the timeline for issuance continues to be delayed in reliance on the Offshore Wind Memo and the deliberate, unlawful actions of the current Trump administration.[42] SouthCoast Wind has

---

[40] *See* Permitting Council, *SouthCoast Wind Permitting Dashboard*, *available at* https://www.permits.performance.gov/permitting-project/fast-41-covered-projects/southcoast-wind-energy-llc-southcoast-wind (last accessed Oct. 2, 2025).

[41] *See* Council on Environmental Quality Memorandum on Implementation of NEPA (Feb. 19, 2025).

[42] The Marine Mammal Protection Act Incidental Take Authorization ("ITA") for the Project has been under review since March 18, 2022, and the proposed ITA was published in the Federal Register in June of 2024. Publication and issuance of the final ITA was expected in early 2025, but has since been delayed over ten months based solely on the Offshore Wind Memo. Similarly, the Clean Water Act Section 402 Permit ("NPDES Permit") for the Project has been ongoing since the Environmental Protection Agency received the permit application in October of 2022. Like the ITA, issuance of the final NPDES Permit was expected in March 2025, but has since been delayed

objected to these unsubstantiated delays, and the exchanges related thereto should be included in the administrative record that SouthCoast Wind has sought to be timely produced in this litigation. The Federal government should not be permitted to ignore its own policy direction and impose unreasonable and unsubstantiated permitting delays across an entire industry, that prejudice SouthCoast Wind by stalling the issuance of those final three permits, and then turn around and rely on these unreasonable and prejudicial permitting delay actions to support a position in this litigation to further prejudice the project sponsor.

Second, Federal Defendants' claim that SouthCoast Wind will suffer no prejudice because the Project is not active or imminent (again, by their own hand in delaying the issuance of three final Project permits) does not pass muster. Despite Federal Defendants' attempt to focus on construction only, project work begins well before all approvals have been issued, and is continuous while the approvals roll in. For example, a project sponsor must acquire necessary materials and contracts years in advance of actual construction, engage with necessary stakeholders, and make business decisions for the Project. In this case, SouthCoast Wind has entered into numerous contracts related to the Project, including for construction vessels and services, export cables, an offshore converter station, and commitments to the states of Massachusetts and Rhode Island. Brown Decl. at ¶ 34. All of this is now at risk due to Federal Defendants acting on the whims of the current Trump administration. Indeed, each day that this Project is further delayed, SouthCoast Wind incurs financial harm and risks under contractual

---

over nine months for no cited reason except the Offshore Wind Memo. Lastly, the Section 10 Rivers and Harbors Act/Section 404 Clean Water Act Permit ("10/404 Permit") has been under review since pre-construction notification was made to the U.S. Army Corps of Engineers in late 2022. Like the others, issuance of the final 10/404 Permit was expected in March 2025, but has since been delayed over ten months for no reason other than a reference to the Offshore Wind Memo. *See* Permitting Dashboard *id.* n. 38.

agreements. Simply put, the undue prejudice upon SouthCoast Wind is clearly active and imminent.

In short, a few outstanding approvals deliberately withheld by other federal agencies acting in concert with Federal Defendants, and arbitrarily ignoring their own policies and SouthCoast Wind's repeated insistence on issuance of such permits, does not negate and will only add to the undue prejudice and imminent harm that SouthCoast Wind will experience if remand is granted here. Federal Defendants' unlawful delay in issuing such approvals simply does not support the argument that there is no undue prejudice felt by SouthCoast Wind if remand is granted.

C.    Federal Defendants' Desire to Conserve Judicial Resources is Misplaced.

Federal Defendants contend that remand is warranted because BOEM's reconsideration of its COP approval (rather than the ROD) will likely result in "a new decision that may alter or even moot Plaintiffs' claims." Dkt. No. 21, at 12. However, this argument fails for two reasons.

First, contrary to their assertion, Federal Defendants have failed to establish that reconsideration of the COP approval under OCSLA's statutory criteria will necessarily impact the claims at issue in this litigation. *See* Section II(A) below. Plaintiff does not challenge the substance of the COP nor OCSLA's statutory lease issuance criteria in the Complaint, but rather challenges the NEPA and NHPA reviews underlying the ROD. It is entirely possible that, if remand is granted, BOEM could take a new agency action on the COP that is unrelated to the narrow range of environmental and historic resource impacts of the Project challenged here. Therefore, because remanding this case to the agency may result in an outcome that would not impact the substance of Plaintiff's claims, granting Federal Defendants' motion will not conserve court and party resources. It should also be noted that courts in the D.C. Circuit generally consider preservation of judicial and party resources **in situations where new evidence becomes available or there are intervening events outside of the agency's control** that may warrant remand. *See e.g., Ethyl*

*Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (emphasis added); *see also FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015). Such is not the case here.

Second, Federal Defendants' argument that remand will promote judicial efficiency is disingenuous in light of their deliberate decision to disengage from this proceeding for several months. Federal Defendants failed to comply with the Court's September 5th deadline to file a responsive pleading, without any lawful justification. Further, Federal Defendants sat on their hands for almost six months after being served with the Complaint, only to file this Motion seeking to further delay these proceedings. As a result of their actions to date, Federal Defendants' purported consideration of judicial resources rings hollow.

      D.    <u>The Substance of the COP is Not At Issue In This Case.</u>

Federal Defendants' request for remand is based solely on BOEM's alleged need to reconsider the COP approval pursuant to yet another agency interpretation of Section 8(p)(4) of OCSLA.[43] Yet, neither the substance of the COP nor OCSLA are at issue in this case, nor mentioned even once in the Complaint.[44] Dkt. No. 1. Rather, Plaintiff has challenged the ROD and the EIS for the Project under NEPA and NHPA.  Thus, in requesting remand on this basis, Federal Defendants seek to create an opportunity to backfill or replace an administrative record to achieve currently non-existent support for reversing SouthCoast Wind's COP approval, without first seeking leave from this Court, while at the same time attempting to limit judicial review.

---

[43] While Federal Defendants state that they may also need to consider the sufficiency of the environmental review under NEPA, the NHPA and the Endangered Species Act, Dkt. No. 21, at 11, they make no effort to justify that statement with specific concerns addressing Plaintiff's claims. It is clear that they seek *carte blanche* to figure out a way to revoke Project approvals to suit their new policy goals.

[44] Plaintiffs' have challenged the substance of the EIS under NEPA and the NHPA. As recently stated by the United States Supreme Court in *Seven County Infrastructure Coalition v. Eagle County*, "review of an agency's EIS is not the same thing as review of the agency's final decision concerning the project." 145 S.Ct. 1497, 1514 (2025).

Federal Defendants make an unsupported assumption that the issues in this case will be impacted by its review of the OCSLA criteria under the newly issued Zerzan Opinion. However, Federal Defendants have not even specified which of the many factors under OCSLA Section 8(p)(4) BOEM expects to reconsider. In any event, it is clear that the OCSLA factors have nothing whatsoever to do with historic preservation review, and thus, have no relevance to Plaintiff's claims. *See* 43 U.S.C. 1337(p)(4)(A)-(L). Furthermore, Federal Defendants apparently still have no way of knowing whether BOEM's reconsideration of the COP under the OCSLA factors will affect the ROD or the EIS, unless they have already prejudged the outcome before doing the additional review they seek via remand. And, even if such reconsideration *did* affect the ROD or EIS, Federal Defendants have no way of knowing if such effect would amount to a basis necessitating revision to these prior approvals.

In short, Federal Defendants' assumption that their reconsideration of the OSCLA factors will affect the decisions being challenged in this case is too attenuated to justify remand at this stage. Federal Defendants should not be permitted to hold this case (and the Project itself) in limbo while it manufactures a reason to revoke valid approvals.

**III     Constitutional Principles Dictate The Need For Judicial Intervention**

    A.     <u>Remand to the Agency Will Only Further This Administration's Unchecked Overreach.</u>

The Executive Branch has clearly demonstrated that it will not stop until the offshore wind industry has been demolished, and it is willing to undo all lawful commitments of prior administrations (including President Trump's first administration, during which SouthCoast Wind's Lease was sold). If the COP approval is remanded for reconsideration, and this case is stayed, the current Trump administration will continue to materially delay any decision, or take

even more assertive action to rescind the Project's COP approval, to serve the ulterior personal motives of the President, under the guise that it has the blessing of the courts.

The doctrine of judicial review prescribes that the Judicial Branch act as an objective arbiter, particularly when a member of the public may be harmed by governmental overreach by another Branch. *See Nat'l Treasury Employees Union v. Nixon*, 492 F.2d 587, 612 (D.C. Cir. 1974) ("[u]nder our system of law, the judiciary has a duty envisioned by the constitutional principle of checks and balances to keep both the Executive and Congress within their respective constitutional domains"). For the reasons discussed herein, Federal Defendants' attack on SouthCoast Wind is a classic case of governmental overreach, rendering judicial intervention necessary to protect SouthCoast Wind, and ultimately those members of the public that would consume its energy. Remanding the COP approval to BOEM for reconsideration, as requested by Federal Defendants, will only further subject SouthCoast Wind to the baseless and petty whims of the current Trump administration[45] without any objective authority or oversight, and dilute the very purpose of the checks and balances that the constitutional separation of powers was intended to create, to say nothing of the erosion of the public trust in the United States to honor its leasing and permitting obligations. Judicial intervention is necessary to circumvent this blatant overreach.

---

[45] In fact, President Trump has been waging a war against the offshore wind industry for decades, long before he was President. *See* NPR, *Thar He Blows: Trump Tussles With Scots Over Wind Turbines* (July 1, 2013), *available at* https://www.npr.org/2013/07/01/196352470/thar-he-blows-trump-tussles-with-scots-over-wind-turbines ("[a] fierce legal battle is under way in Scotland, involving U.S. tycoon Donald Trump. At the heart of the wrangle: wind . . . The roots of Trump's hatred for these turbines can be found, at least in part, in what was once a stretch of rolling dunes and grassland in northeastern Scotland, overlooking the North Sea") (last accessed Oct. 2, 2025).

B.    <u>There is No Reasonable Basis to Stay the Proceedings.</u>

Federal Defendants attempt to fully shut out any judicial intervention through seeking an indefinite stay. Again, this exposes SouthCoast Wind to continued and ongoing harm by the current Trump administration without any recourse in this proceeding.

Federal Defendants have not met their burden of establishing the need for a stay of this case. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997). Critically, Federal Defendants have failed to establish a "legitimate and substantial" justification for reconsidering the COP approval that would justify remand. Without remand, there is no need to put a pause on moving forward with reaching a decision on the merits of the ROD. Further, even if Federal Defendants were genuinely planning on reevaluating the COP under OCSLA's statutory factors, they have not demonstrated that doing so will necessarily involve evaluation of the environmental and historic resources reviews – the very review processes that are at issue in Plaintiff's Complaint. Therefore, Federal Defendants have failed to meet their burden of establishing that *any* stay of this case is warranted, let alone an **indefinite** stay. *See Landis v. North American Co.*, 299 U.S. 248, 255 (1936) ("[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both"). For these reasons, SouthCoast Wind urges this Court to deny Federal Defendants' request for stay, regardless of whether or not remand is granted.

C.    <u>Judicial Intervention is Necessary Even if Remand is Granted.</u>

Even if this Court decides to grant Federal Defendant's Motion – which SouthCoast Wind maintains would be entirely inappropriate for the reasons discussed above – then, at the very least, Federal Defendants must be held to strictly prescribed requirements to perform their review on remand within a limited time, to ensure that BOEM actually performs the reconsideration that they have described to this Court in a timely manner. Given the significant evidence demonstrating

Federal Defendants' failure to abide by Court deadlines (based on its bad faith intent to materially delay this Project to advance the vendetta of the Trump administration against the offshore wind industry) Federal Defendants must be held to make a decision on remand within a particular, expedited timeframe.

For these reasons, if the Motion to Remand is granted, SouthCoast Wind respectfully urges this Court to: (1) hold a hearing on the issues subject to review on remand within 30 days of this Opposition filing; (2) require Federal Defendants to file biweekly status reports with the Court and serve them upon all parties regarding the progress of review following any grant remand; and (3) require that all parties participate in a monthly status conference until BOEM renders its final decision on remand, with such final decision to be no later than sixty (60) days from the Court's grant of remand.

## CONCLUSION

For the foregoing reasons, Defendant-Intervenor SouthCoast Wind respectfully requests that the Court:

1) Deny Federal Defendants' Motion for Voluntary Remand and Stay;

2) To the extent the Court is compelled to decision on the "best reading" of OCSLA Section 8(p)(4), issue a briefing schedule to allow the parties to fully brief this issue; and

3) Order Federal Defendants to respond to Plaintiff's Complaint by October 24, 2025.

Furthermore, SouthCoast Wind requests a hearing on the matter of remand. Lastly, if remand is granted, SouthCoast Wind requests that this Court require a decision on remand be made within 60 days of the Court's decision, require Federal Defendants to file and serve biweekly status

reports, and require that all parties participate in a monthly status conference until the decision on

remand is rendered by the agency.

HOLLAND & KNIGHT LLP

By: */s/ Rafe Petersen*

Rafe Petersen (Bar ID Number: 465542)
Alexandra E. Ward (Bar ID Number: 1687003)
800 17th Street NW, #1100
Washington, D.C. 20006
Rafe.Petersen@hklaw.com
T: (202) 419-2481
F: (202) 955-5564

*Counsel for Defendant-Intervenor*
*SouthCoast Wind Energy LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2025, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to all counsel of record.

HOLLAND & KNIGHT LLP

By: */s/ Rafe Petersen*

Rafe Petersen (Bar ID Number: 465542)
Alexandra E. Ward (Bar ID Number: 1687003)
800 17th Street NW, #1100
Washington, D.C. 20006
Rafe.Petersen@hklaw.com
Alexandra.ward@hklaw.com
T: (202) 419-2481
F: (202) 955-5564

*Counsel for Defendant-Intervenor*
*SouthCoast Wind Energy LLC*

33